IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| DEAUNDRE BAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case no: 1:25-cv-01206-JRS-KMB |
| | ) |
| CITY OF INDIANAPOLIS, and | ) |
| AFSCME LOCAL 725, | ) |
| | ) |
| Defendants. | ) |

**DEFENDANT CITY OF INDIANAPOLIS'S BRIEF IN SUPPORT OF
PARTIAL MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendant, City of Indianapolis ("the City"), by counsel, files this Brief in support of its Partial Motion to Dismiss Plaintiff's Amended Complaint. [Dkt. 33.] The City is entitled to dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6) for the following reasons: (1) Plaintiff's sexual harassment and sexual discrimination claims must be dismissed, as the facts that Plaintiff relies upon are time-barred or beyond the scope of his EEOC Charge, such that Plaintiff has completely failed to state a claim; (2) Plaintiff's interference claim must be dismissed because Plaintiff has failed to allege any intentionally discriminatory or unreasonable inquiries by the City; (3) Plaintiff's state law breach of contract claim is preempted by the National Labor-Management Relations Act ("LMRA") and the City is otherwise immune from liability under this federal statute; and, (4) Plaintiff's prayer for punitive damages under either Title VII or the ADA are expressly prohibited.

**I. Introduction**

Plaintiff, Deaundre Baker, is a gay man who was formerly employed by the City and subsequently terminated on February 9, 2024. [Dkt. 25 ¶¶ 1, 10.] While employed with the City, Plaintiff was a member of the American Federation of State, County, and Municipal Employees Local 725 ("Local 725"). [Dkt. 1 ¶ 1.] In his Amended Complaint, Plaintiff claims that the City (1) violated Title VII of

1

the Civil Rights of 1964 by failing to prevent his alleged sexual harassment and discrimination; (2) violated the Americans with Disabilities Act by interfering with or retaliating against him for requesting reasonable accommodations regarding his alleged disability; and (3) breached the collective bargaining agreement between the City and Local 725 which provided him certain protections as a third-party beneficiary. [Dkt. 1 ¶¶ 71-89, 99-133, 147-152.]

The City moves to dismiss of Plaintiff's sexual harassment claim because the facts supporting such claim are time barred or barred because they were not encompassed by his EEOC charge; the ADA Interference claim because Plaintiff has failed to identify any discriminatory intent or unreasonable inquiry by the City, and his state law breach of contract claim because this claim is completely precluded by § 301 of the National Labor-Management Rights Act ("LMRA") and the City is otherwise immune from liability under this federal statute. Lastly, the City seeks to strike Plaintiff's request for punitive damages as they are unavailable for suits brought against the City as a municipality.

## II.  Factual Allegations[1] and Procedural Background

### A. Plaintiff's Employment with the City

On August 31, 2020, Plaintiff began his employment with the City as a Maintenance Operations Tech within the City's Department of Public Works. [Dkt. 25 ¶ 9.] In approximately October or early November 2020, Plaintiff alleges that he was sexually assaulted by his former supervisor Tim Robinson ("Robinson"). [Dkt. 25 ¶ 12.] Plaintiff did not report the alleged assault to the City. [Dkt. 25 ¶ 13.] Following the alleged assault, Plaintiff claimed that Robinson frequently gossiped about his sexuality and that fellow DPW coworkers at Garage 3 often made anti-gay slurs.

---

[1] The City treats the well-plead facts in Plaintiff's Complaint as undisputed only for the purposes of this Motion to Dismiss and the standards of review applicable to such motion. The City, through such brief and motion, in no way waive their right to contest or dispute such allegations throughout this proceeding. However, the City requests this Court decline to "accept as true any legal assertions or recital of the elements of a cause of action supported by mere conclusory statements." *Vesely v. Armslist LLC*, 762 F.3d 661, 664–65 (7th Cir.2014) (quotation marks and citation omitted).

[Dkt. 25 ¶¶ 15-17.] Plaintiff does not refer to or allege any specific period of time which he heard these slurs from his coworkers. [Dkt. 25 ¶¶ 15-17.]

On January 8, 2022, Plaintiff was involved in an accident while operating a DPW vehicle, in which he alleges he was pinned behind the vehicle's steering wheel. [Dkt. 25 ¶¶ 20-22.] Plaintiff reported the accident to the City's dispatch and Robinson before another coworker, Pierre Turner, came to his aid. [Dkt. 25 ¶¶ 23-25.] Plaintiff alleges that he suffered a concussion, an unspecified back injury, and possibly a stroke as a result of the accident and that he currently still suffers from back pain from the accident. [Dkt. 25 ¶¶ 26-27.]

Plaintiff alleges that on July 26, 2023, he informed his supervisor Tyrone White ("White") of a safety concern regarding a DPW vehicle. [Dkt. 25 ¶ 30.] In response, Plaintiff claims that White mocked his sexuality and ripped the vehicle's keys from his hand. [Dkt. 25 ¶¶ 30-32.] Plaintiff further alleges that White then wrote him up for reporting the issue while continuing to mock his sexuality. [Dkt. 25 ¶ 33.] Plaintiff believes that the purpose of mocking his sexuality was to compel him to resign from his position. [Dkt. 25 ¶ 34.] Plaintiff informed Local 725 of the alleged harassment by Robinson and DPW supervisors and was advised by union leadership not to file a grievance. [Dkt. 25 ¶¶ 35-36.] Plaintiff further informed the Local 725 President of his intent to file sex discrimination charge with the EEOC. [Dkt. 25 ¶ 37.] Plaintiff disregarded the advice of Local 725 and on July 27, 2023, subsequently filed a grievance regarding the interaction with White and presented the grievance to White himself, while accompanied by union representative Kenny Stringer ("Stringer"). [Dkt. 25 ¶¶ 38-39.] Plaintiff claims that in response, White tore the grievance up and did not address it. [Dkt. 25 ¶ 39.]

Later the same year, in early December 2023, Plaintiff began training to operate DPW's snow plow and salt trucks. [Dkt. 25 ¶¶ 41-44.] Plaintiff claims that while driving the salt truck during training, the truck's suspension aggravated an unspecified injury, causing him pain in his back and legs. [Dkt.

3

25 ¶ 44.] On December 12, 2023, Plaintiff texted Robinson and informed Robinson he could not operate DPW salt trucks because it caused him "severe pain." [Dkt. 25 ¶ 46.] On December 13, 2025, Robinson requested Plaintiff to provide a doctor's note stating he was unable to operate the salt truck as part of his job duties. [Dkt. 25 ¶ 47.] Eight days later, on December 21, 2023, Plaintiff alleges that he provided a doctor's note to the City stating that he would not be able to operate a salt truck due to an unspecified medical condition. [Dkt. 1 ¶ 48.]

Plaintiff claims that on December 27, 2023, Robinson told him that both Local 725 and the City's human resource department and questioned the validity of the doctor's note. [Dkt. 25 ¶ 49.] On January 2, 2024, Plaintiff inquired regarding accommodation for his alleged disability to City human resources employee, Seraph Powell-Burgin ("Powell-Burgin") [Dkt. 25 ¶ 50.] In response to his inquiry, Powell-Burgin stated in an email that the City was "explor[ing] any/all accommodations to help [Plaintiff] to perform [his] job duties," including driving a snow plow vehicle which was an essential function of Plaintiff's position. [Dkt. 25 ¶ 59.] Powell-Burgin additionally requested Plaintiff to authorize the City to contact his physician regarding his requested accommodation. [Dkt. 25 ¶¶ 50, 52.] Plaintiff signed the authorization which was sent to his doctor along with a form requesting information about the nature of Plaintiff's claimed medical condition. [Dkt. 25 ¶¶ 54, 56.] Plaintiff's doctor completed the form and returned it to the City. [Dkt. 25 ¶ 58.]

On January 5, 2024, Plaintiff alleges he contacted union representative Stringer seeking advice on how to proceed with his accommodation request, which Stringer ignored. [Dkt. 25 ¶ 72.] On January 11, 2025, Plaintiff met with Stringer and explained his request for accommodation and his desire to remain on snow plow duty as part of his role as a Maintenance Operations Tech. [Dkt. 25 ¶ 73.] Stringer told Plaintiff that he would report back to Plaintiff the next day, but failed to respond to Plaintiff's messages between January 12 and January 22, 2024. [Dkt. 25 ¶ 74-75.] On January 17, 2024, Plaintiff alleges he sought further assistance from Local 725 President Steve Quick ("Quick") who

4

responded that Plaintiff should have informed Local 725 sooner to assist in seeking an accommodation. [Dkt. 25 ¶ 76.]

On January 17, 2024, Plaintiff alleges that he was demoted from Maintenance Operations Tech to Laborer, transferred from second shift to first shift, and received a decrease to his hourly wages. [Dkt. 25 ¶¶ 67-68, 71.] Following his demotion, Plaintiff alleges that on January 22, 2024, he emailed both Quick and Stringer to seek assistance of Local 725 to grieve his demotion. [Dkt. 25 ¶ 78.] Quick responded that Plaintiff had not previously reached out to him and that Plaintiff never requested representation from Local 725 on any issues related to his demotion or accommodation. [Dkt. 25 ¶ 78.] When Plaintiff informed Local 725 that he intended to retain an attorney, Quick informed him that Local 725 would not be able to assist him regarding his accommodation request or demotion. [Dkt. 25 ¶ 81.] Plaintiff further alleges that on January 10, 2024, Local 725 provided false information to Powell-Burgin and negotiated a demotion on his behalf. [Dkt. 25 ¶ 80.] On January 29, 2024, Plaintiff filed a second grievance based upon his demotion, and claims that Local 725 refused to assist in prosecuting this grievance. [Dkt. 25 ¶ 93.]

Due to his shift transfer, Plaintiff alleges he was unable to attend several days of work and informed his new supervisor of these absences. [Dkt. 25 ¶ 82.] Despite informing his new supervisor, Plaintiff claims that Robinson requested to have a portion of these absences to be marked as unexcused leave without pay. [Dkt. 25 ¶ 84.] On or around February 2, 2024, Robinson called a disciplinary meeting with Plaintiff in the presence of a Local 725 representative and presented Plaintiff with a "Last Chance Agreement". [Dkt. 25 ¶ 86.] Local 725 did not grieve any write-ups leading to the agreement and instead encouraged Plaintiff to sign the agreement based upon his absences. [Dkt. 25 ¶¶ 94-95.] On February 9, 2024, Plaintiff alleges that he was terminated after Robinson accused him of failing to clock in for his shift on one of his previous workdays. [Dkt. 25 ¶ 88.] Neither Plaintiff, nor Local 725 pursued a grievance following his termination. [Dkt. 1 ¶ 69.]

5

**B. EEOC Charge**

On May 17, 2024, Plaintiff filed a Charge with the Equal Employment Opportunity Commission ("EEOC Charge") alleging that he was discriminated against on the basis of his disability, sex, and race, in addition to being retaliated against by the City. [Dkt. 16-2 - Plaintiff's EEOC Charge.] Specifically, Plaintiff's EEOC Charge alleges conduct beginning on July 26, 2023, by the City's employees to support his claims that he was discriminated against on the basis of his disability and sex. [Dkt. 16-2 at 1-4.] The majority of the factual allegations offered in support of his EEOC Charge focus on Plaintiff's claims regarding ADA discrimination and retaliation. [Dkt. 16-2 at 1-4.] The only identifiable instance of sexual discrimination which Plaintiff alleges in his EEOC Charge occurs on July 26, 2023, in which Plaintiff alleges that Tyrone White, a supervisor, said to Plaintiff "You whining ass n****, you girl, and you punk ass n*****" and referred to him by a woman's name. [Dkt. 16-2 at 1.] On March 20, 2025, following the submission of the City's position statement, the EEOC issued Plaintiff a right-to-sue letter and Plaintiff filed the instant suit on June 18, 2025. [Dkt. 1.] On August 26, 2025, the City filed a Partial Motion to Dismiss Plaintiff's Complaint [Dkt. 16] and Plaintiff filed his Amended Complaint in response on September 30, 2025. [Dkt. 25.]

**C. Plaintiff's Amended Complaint**

Plaintiff alleges the following claims in his Amended Complaint [Dkt. 25]:

<u>Against the City of Indianapolis</u>

- Sexual Harassment
- Sex Discrimination
- Failure to Accommodate
- Disability Discrimination
- Interference with ADA Rights
- Retaliation pursuant to the ADA
- Breach of Contract

<u>Against Local 725</u>

- Sex discrimination
- ADA Retaliation by recommending demotion
- ADA Retaliation by failing to assist Plaintiff to obtain reasonable accommodations
- Interference with ADA Rights
- Breach of Contract
- Breach of Duty of Fair Representation

6

Plaintiff's Amended Complaint alleges conduct occurring as far back as 2020, regarding instances of alleges sexual harassment against the Plaintiff. [Dkt. 25 ¶ 12.] Specifically, Plaintiff alleges that Robinson groped him as early as October 2020, that Robinson made Plaintiff's sexuality the topic of gossip sometime shortly thereafter, and that Plaintiff often heard anti-gay slurs in Garage 3, where he worked. [Dkt. 25 ¶ 15-17.]

### III.     Legal Standard

The City seeks partial dismissal of the Plaintiff's Amended Complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Under Rule 12(b)(6), a complaint may be dismissed for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint, not the factual sufficiency. *Szabo v. Bridgeport Mach., Inc.,* 249 F.3d 672, 675–76 (7th Cir. 2001). When evaluating a motion to dismiss under Rule 12(b)(6), courts must accept the well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in the non-moving party's favor. *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015). Factual allegations are accepted as true at the pleadings stage, but pleadings consisting of no more than mere conclusions are not entitled to the presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are insufficient. *Id*. A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. at 678 (citing, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). Nor will a "complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id*. (quoting *Twombly,* 550 U.S. at 557). Such boilerplate language is insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co.*, 694 F.3d 873, 885 (7th Cir. 2012). When reviewing a 12(b)(6) motion a court may consider documents referred to in a complaint and central to a plaintiff's claim without converting a motion to dismiss to a summary judgment motion. *Geinosky v. City of Chicago,* 675 F.3d 743, 745 n. 1 (7th Cir.

7

2012).

IV. **Argument**

   A. **Plaintiff's sexual harassment and sex discrimination claims are barred and therefore must be dismissed.**

Any alleged actions constituting discrimination or retaliation by the City occurring 300 or more days before Plaintiff filed his EEOC charge (May 14, 2025) are not actionable. Similarly, to the extent that Plaintiff failed to include any Title VII or ADA claims within his underlying EEOC Charge, these claims are also not actionable. Thus, when unactionable claims form the basis of a plaintiff's complaint, they must be dismissed for failure to state a claim.

Plaintiff has alleged sexual harassment and sex discrimination in the form of a hostile work environment under Title VII against the City of Indianapolis.

> One of the ways in which Title VII's prohibition against sex discrimination in the terms and conditions of employment may be violated is through sexual harassment that is either severe or pervasive enough to create an abusive working environment. *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993)). Indeed, more than 20 years ago, the Supreme Court recognized that "a plaintiff may establish a violation of Title VII by proving that discrimination based on sex has created a hostile or abusive work environment." *Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986). In order to establish a prima facie case under this theory, a plaintiff must show, among other things, that she has been subjected to "behavior so objectively offensive as to alter the conditions of [her] employment." *Oncale*, 523 U.S. at 81, 118 S.Ct. 998 (internal quotations omitted). In addition, she must show the link between this treatment and her sex: as the Court stressed in *Oncale*, "Title VII does not prohibit all verbal or physical harassment in the workplace; it is directed only at '*discriminat[ion]* ... because of ... sex.'" *Id.* at 80, 118 S.Ct. 998 (emphasis in original).

*Jackson v. Cnty. of Racine*, 474 F.3d 493, 499 (7th Cir. 2007). In evaluating the severity of harassment, the Seventh Circuit has stated as follows:

> On one side lie sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; pornographic pictures. On the other side lies the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers.

8

*E.E.O.C. v. Mgmt. Hosp. of Racine, Inc.*, 666 F.3d 422, 432 (7th Cir. 2012) (quoting *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430–31 (7th Cir.1995)). Thus, "relatively isolated" instances of non-severe misconduct will not support a hostile environment claim. *Weiss v. Coca–Cola Bottling Co. of Chicago,* 990 F.2d 333, 337 (7th Cir.1993).

> 1. **This Court should disregard Plaintiff's alleged facts to the extent that they are time barred and/or to the extent that they were not included or encompassed by his EEOC Charge.**

Plaintiff has pled several allegations in support of his claim of sexual harassment and sex discrimination claims which either took place more than 300-days before he filed his EEOC Charge, or were otherwise never mentioned in this Charge, or both.

> a. **Any alleged facts occurring before July 19, 2023, are time barred for failing to include them in a timely EEOC Charge.**

Any alleged discriminatory or harassing actions by the City that occurred 300 or more days before May 14, 2024, are not actionable. Therefore, claims based on allegations occurring before July 19, 2023 are barred. Because Indiana is a "deferral state", meaning it has a state agency with enforcement powers parallel to the EEOC, under Title VII, a plaintiff has "300 days from the alleged unlawful employment practice to file a timely charge" with the EEOC. 42 U.S.C. § 2000e–5(e)(1); 29 C.F.R. § 1601.80; *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009). Because the ADA's enforcement provision expressly incorporates § 2000e–5 of Title VII, claims for discrimination under the ADA also must also be filed with the EEOC within 300 days "after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e–5(e)(1), incorporated by 42 U.S.C. § 12117(a). "[D]iscrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114, (2002)). Such acts are not actionable even when "mixed with a hostile environment[.]" *Pruitt v. City of Chicago, Illinois*, 472 F.3d 925, 927 (7th Cir. 2006) (declaring that discrete acts, even if mixed with a hostile work environment, does not subvert the time

9

requirement for such claims.) Moreover, a timely filed charge cannot save discrete acts that are related to the charge but have not been timely filed. *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114. Courts may only look outside the statutory 300-day period when an EEOC charge alleges a "continuing violation." *Pruitt*, 472 F.3d at 927. However, the 300-day filing window still applies to discrete acts which represent adverse employment actions or "unlawful employment practices." *Nat'l R.R. Passenger Corp.*, 536 U.S. at 114.

The majority of Plaintiff's allegations offered in support of his hostile work environment sexual harassment or discrimination claims occurred well before July 19, 2023, and therefore may not be offered to support such claim. Plaintiff's allegation that a manager, Robinson, grabbed him by the genitals in the hallway of his workplace in fall of 2020 is clearly time-barred. [Dkt. 25 at ¶ 12.] Plaintiff alleges that, frequently thereafter, Robinson and DPW employees also made Plaintiff's sexuality the topic of gossip and that he often heard anti-gay slurs, but provides no durational reference for when these acts occurred. [Dkt. 25 ¶¶ 15-17.] Despite these acts taking place as early as October 2020, Plaintiff has additionally not alleged that this harassment or sex discrimination constituted a continuing violation within his EEOC Charge. [*See* Dkt. 26.1.] Such allegations are therefore time barred and may not be used to support Plaintiff's claims of a hostile work environment sex discrimination or sexual harassment claims. *See Pruitt*, 472 F.3d at 927 (7th Cir. 2006).

### b. Factual allegations which were not included or encompassed by Plaintiff's EEOC Charge should be disregarded.

To bring a cause of action under Title VII or the ADA, Plaintiff may not include in his Amended Complaint claims that he failed to include in his underlying EEOC Charge. "A Title VII complaint generally is limited to the claims asserted in the underlying EEOC discrimination charge." *Majors v. Gen. Elec. Co.*, 714 F.3d 527, 536 (7th Cir. 2013); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110-12 (7th Cir. 1992) ("An aggrieved employee may not complain to the EEOC of only certain instances of discrimination, and then seek judicial relief for different instances of discrimination.").

10

The dual purpose of this rule is to afford the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion, while providing the employer some warning of the conduct about which the employee is aggrieved. *Id.* Although the complaint need not be identical to the EEOC charge, it must be "like or reasonably related to the allegations" of the underlying charge and that may be expected to grow out of those allegations. *Harper v. Godfrey Co.*, 45 F.3d 143, 147 (7th Cir. 1995) (*quoting Rush v. McDonald's Corp.*, 966 F.2d 1104, 1111 (7th Cir.1992)). Claims are not considered "like or reasonably related" just because they both assert the same bases of discrimination. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994) (noting that, because an employer can discriminate on the basis of sex in numerous ways, it is not enough that the complaint and charge both allege sex discrimination; there must be a factual relationship between the claims). This means that specific allegations occurring before the date of Plaintiff's Charge, but not identified in his Amended Complaint, are beyond the scope of this charge and should be barred. *McGoffney v. Vigo County Div. of Family & Children Servs.*, 389 F.3d 750, 752 (7th Cir. 2004); *Cheek,* 31 F.3d at 500.

Many of the allegations Plaintiff relies upon to support his sex discrimination or sexual harassment claims were not included in his EEOC Charge and are beyond the scope of the allegations in the charge. Allegations about groping by manager Tim Robinson, gossip surrounding Plaintiff's sexuality, and pervasive anti-gay slurs around the garage are nowhere to be found in Plaintiff's EEOC Charge. [*cf.* Dkt. 25 ¶¶ 12, 15-17; Dkt. 26.1.] These allegations are not "like or reasonably related to the allegations of the underlying charge" which instead focuses primarily on Plaintiff's concerns that his safety-concerns and disability were being ignored. *Harper.*, 45 F.3d at 147. Plaintiff is therefore barred from raising a claim using such facts beyond the scope of EEOC Charge in this court. *Riley*, 909 F.3d at 188.

> **2. Because most of Plaintiff's facts in support of his sexual harassment claim are time-barred or beyond the scope of his Charge, his factual allegations are insufficient to support his hostile work environment claim.**

Because most of Plaintiff's allegations in support of his hostile work environment claim are time-barred or beyond the scope of his EEOC charge, his isolated alleged instance of discriminatory conduct on July 26, 2023, is insufficient to support a claim for sex discrimination. As argued above, any alleged conduct which is time-barred or beyond the scope of his EEOC Charge should not be considered by this Court as properly pled. This would preclude Plaintiff's allegations concerning alleged genital groping by manager Robinson, gossip about his sexuality, and anti-gay slurs being used in the workplace. That being the case, Plaintiff has no allegations to rely on to support his assertion that the City fundamentally altered the conditions of his employment. *See Oncale*, 523 U.S. at 81, (requiring that a hostile work environment sex discrimination claim allege such conduct that would alter the condition of their employment). Calling Plaintiff by a woman's name appears is an isolated instance of vulgar banter by a coarse or boorish worker, and does rise to the level of discrimination to alter the condition of his employment. *Culligan Int'l Co.*, 50 F.3d at 430–31. Therefore, because Plaintiff's Amended Complaint wholly lacks allegations of the sort of severe or pervasive incidents that would support a hostile work environment claim, this claim should be dismissed.

### B. Plaintiff's claim of ADA Interference should be dismissed, as he has failed to allege conduct which would constitute impermissible interference, instead only alleging a limited and proportional inquiry following a request for reasonable accommodation.

Plaintiff alleges that the City impermissibly interfered with his rights under the ADA when it made an unreasonable inquiry as to the nature or severity of his disability. However, Plaintiff fail to allege any unreasonable inquiry or discriminatory intent by the City in requesting additional medical information.

> Under the ADA anti-interference provision, it is unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed, or on the account of his or her having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by [the ADA]."

*Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017) (quoting 42 U.S.C. § 12203(b)).

12

The Seventh Circuit has identified that, in order to make a claim for interference under the ADA, a Plaintiff must demonstrate that:

> (1) [he] engaged in activity statutorily protected by the ADA; (2) [he] was engaged in, or aided or encouraged others in, the exercise or enjoyment of ADA protected rights; (3) the defendants coerced, threatened, intimidated, or interfered on account of [his] protected activity; and (4) the defendants were motivated by an intent to discriminate.

*Id.* at 550-51.

Plaintiff cannot establish a claim for interference under the ADA, because he has not alleged that the inquiry in question was motivated by discriminatory intent. Plaintiff's own allegations demonstrate that Powell-Burgin's inquiry into Plaintiff's medical condition was reasonable because it was job-related and consistent with a business necessity. Specifically, Plaintiff makes the following allegations:

- "On or around December 27, 2023, Robinson told Plaintiff that Local 725 and the City's human resources department ("HR") were questioning the validity of the doctor's note." [Dkt. 25 ¶ 49.]

- "In the January 2, 2024, email to Plaintiff, Powell-Burgin claimed, on the one hand, that 'driving the snow plow vehicle [wa]s an essential function of [Plaintiff's] position,' and on the other hand, the City was "explor[ing] any/all accommodations to help [Plaintiff] to perform [his] job duties." [Dkt. 25 ¶ 59.]

- "Because Plaintiff had already disclosed the details of his disability and provided the City with a note from his physician explaining why he was unable to operate the snow plow vehicle, Powell-Burgin's request to contact Plaintiff's doctor was unnecessary and unwarranted. ." [Dkt. 25 ¶ 53.]

- "The City coerced, intimidated, threatened, and/or interfered with Plaintiff's exercise of his rights under the ADA by requiring Plaintiff to authorize unnecessarily inquiries into the nature or severity of his disability." [Dkt. 25 at ¶ 157.]

13

None of these allegations demonstrate the City's "intent to discriminate." *Frakes*, 872 F.3d at 550-51. On such grounds alone, Plaintiff's claim of ADA interference should be dismissed. The City's request for information from Plaintiff's physician was reasonable on its face, because it followed Plaintiff's request for an accommodation based upon his claim that he was unable to perform essential job functions. The same subchapter of the ADA identifying unreasonable inquiries makes clear that certain medical inquiries, especially as they relate to essential job-functions are perfectly reasonable: "[. . . .] A covered entity may make inquiries into the ability of an employee to perform job-related functions." 42 U.S.C. § 12112(d)(4)(B). Plaintiff admits, in reciting the ADA's language, that an inquiry is reasonable where "[. . .] such examination or inquiry is shown to be job-related and consistent with business necessity." Here, Plaintiff has simply stated that the City required authorization to contact his doctor after he made a request for an accommodation, even though such conduct is a necessary part of the interactive process for a reasonable accommodation and specifically permitted under the ADA. *Id.*

Plaintiff's only other allegations are threadbare recitals of the elements of ADA interference claim and conclusory allegations about the City's wrongful conduct, without supporting factual allegations, which this Court need not accept as true. *See Vesely*, 762 F.3d at 664–65. Therefore, Plaintiff's claim of interference under the ADA should be dismissed for a failure to state a claim upon which relief may be granted.

### C. Plaintiff's breach of contract claim should be dismissed, because such state law claims are preempted by LMRA and municipal entities are immune.

Plaintiff has brought a state law breach of contract claim against the City of Indianapolis, alleging that the City violated provisions in the collective bargaining agreement between Plaintiff and Local 725. "The essential elements of a breach of contract action are the existence of a contract, the defendant's breach thereof, and damages." *McVay v. Store House Co.*, 289 F. Supp. 3d 892 (S.D. Ind. 2017) (quoting *McCalment v. Eli Lilly & Co.*, 860 N.E.2d 884, 894 (Ind. Ct. App. 2007)). Plaintiff,

however cannot establish a state law breach of contract claim when such claims are either preempted by or the City is immunized from liability under federal law.

### 1. Plaintiff's state law breach of contract claim is preempted by federal law and should therefore be dismissed.

In Count X of his Amended Complaint, Plaintiff alleges a state law breach of contract claim in which he claims the City denied specific benefits provided to him under the collective bargaining agreement ("CBA"), between the City and AFSCME Local 725. [Dkt. 25 ¶ 189.] However, the LMRA completely preempts state law claims founded directly on rights created by collective bargaining agreements and substantially dependent on analysis of such agreements. 29 U.S.C. § 185(a); *Caterpillar Inc. v. Williams*, 482 U.S. 386, 387 (1987). Additionally, the Seventh Circuit has stated that § 301 of the LMRA preempts "state law claims that indirectly implicate a collective bargaining agreement." *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d 836, 841 (7th Cir. 2015). Section 301 is one of only a few statutes that "completely preempt" state law. *Smith v. Colgate-Palmolive Co.*, 943 F.2d 764, 770 (7th Cir. 1991). Moreover, claims governed by § 301 "must either be treated as a § 301 claim or dismissed as pre-empted by federal labor-contract law." *Olson v. Bemis Co., Inc.*, 800 F.3d 296, 303 (citing *Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 213 (1985)). "Even if a plaintiff makes no mention of § 301 in a complaint, § 301 nevertheless may displace entirely a state cause of action…" *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 498 (7th Cir. 1996). Where a state law claim brought against a municipality is preempted by the LMRA, dismissal under Rule 12(b)(6) for failure to state a claim is proper. *Healy.*, 804 F.3d at 840-842.

Regardless of whether Plaintiff has mentioned LMRA, because he alleges that his rights under the CBA were violated, LMRA preempts his state law breach of contract claim. Plaintiff alleges that he was denied particular benefits under the CBA, including the City's alleged failures to refrain from arbitrary and capricious discipline; provide a union representative during his demotion meeting; accept and receive Plaintiff's grievances; act in good faith to resolve grievances; allow Plaintiff benefit leave

15

pay; adhere to the CBA's non-discrimination and involuntary transfer policies; and investigate and remedy hazardous working conditions. [Dkt. 25 ¶ 191.] Plaintiff admits that these were "benefits promised to him in the CBA" entered between the City and AFSCME Local 725. [Dkt. 25 ¶ 191.] Plaintiff specifically alleges that by denying him benefits as a third-party beneficiary under the CBA, that the City breached the CBA. [Dkt. 25 ¶189.] As pled, Plaintiff's breach of contract claim against the City is founded directly on specific contractual rights denied to him under the CBA, for which adjudication of his claims would necessarily require an analysis of the allegedly breached provisions. Consequently, his breach of contract claim is entirely precluded by the LMRA. Plaintiff has therefore failed to state a claim under Rule 12(b)(6) and Count X of his Amended Complaint must be dismissed.

### 2. To the extent Plaintiff's Breach of Contract Claim is a § 301 Claim, the City is Immune from liability and this claim must be dismissed.

State law claims preempted by § 301 of the LMRA are not required to be automatically dismissed but may instead be treated as if they allege a breach of a collective bargaining agreement in violation of § 301. *Int'l Bhd. of Elec. Workers, AFL–CIO v. Hechler*, 481 U.S. 851, 863, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987). Generally, § 301 grants federal courts jurisdiction over "[s]uits for violation of contracts between an *employer* and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a) (emphasis added). However, the definition of "employer" under the LMRA expressly excludes "any State or political subdivision thereof". 29 U.S.C. § 152(2); *Healy*, 804 F.3d at 841. Therefore, although "a state or political subdivision may sign and be a party to a collective bargaining agreement, it remains immune from federal lawsuits arising under the collective bargaining agreement and relevant federal law." *Id*.

Here, to the extent the Court converts Plaintiff's breach of contract claim into a § 301 claim, the City is immune. Under Indiana law, the City is a political subdivision. *See* Ind. Code §§ 36-1-2-3 and 13. As a political subdivision, the City is not an "employer" under the LMRA. 29 U.S.C. § 152(2). Because the City is not an employer under the LMRA, it cannot be sued under § 301, and Plaintiff has

16

failed to state a claim for which relief can be granted. *See* 29 U.S.C. § 185(a).

Plaintiff has failed to state a breach of contract claim for which he can be granted relief under either applicable state of federal law. Therefore, Count X of his Amended Complaint should be dismissed pursuant to Rule 12(b)(6).

### D. Punitive damages awards against the City are expressly prohibited.

In his Amended Complaint, Plaintiff seeks an "award of punitive damages, as allowable by law". However, 42 U.S.C. § 1981a(b)(1) exempts political subdivisions from judgments for punitive damages, with respect to both Title VII and ADA. *See Passanati v. Cook County*, 689 F.3d 655, 677 (7th Cir. 2012); *See also Blalock v. Illinois Dept. of Human Serv.*, 349 F. Supp. 2d 1093, 1097 (N.D. Ill. 2004) ("42 U.S.C. § 1981a exempts government agencies from judgments for punitive damages, with respect to both Title VII and ADA claims."). Because the City is a political subdivision., Plaintiff is barred from recovering punitive damages against the City. Therefore, Plaintiff's prayer for punitive damages against the City should be stricken from his Amended Complaint.

## V. Conclusion

Based upon the foregoing, Plaintiff has failed to state claims for which relief can be granted against the City. Accordingly, Defendant requests that Plaintiff's sexual harassment, sex discrimination, ADA interference, and breach of contracts claims made within his Amended Complaint [Dkt. 25] be dismissed in their entirety.

    Respectfully Submitted,

    OFFICE OF CORPORATION COUNSEL

    */s/ Brandon Newhart*
    Brandon Newhart (31438-71)
    Assistant Corporation Counsel
    200 E. Washington Street, Suite 1601
    Indianapolis, Indiana 46204
    T: (317) 327-4055
    F: (317) 327-3968
    Brandon.Newhart@indy.gov

**CERTIFICATE OF SERVICE**

I certify that the foregoing was electronically filed on this Tuesday, October 28, 2025, through the ECF E-Filing System and that the following Party was served via the court's ECF system:

    Mary Kate Dugan
    PARRHESIA LAW, LLC
    2022 N. Riley Ave
    Indianapolis, Indiana 46218
    marykate@parrhesialaw.com

    Robert A. Hicks
    MACEY SWANSON HICKS & SAUER
    429 N. Pennsylvania Street, Suite 204
    Indianapolis, IN 46204-1800
    rhicks@maceylaw.com

    */s/ Brandon Newhart*
    Brandon Newhart (31438-71)
    Assistant Corporation Counsel

OFFICE OF CORPORATION COUNSEL
200 East Washington Street, Room 1601
Indianapolis, Indiana 46204
Telephone: (317) 327-4055
    Fax: (317) 327-3968

OFFICE OF CORPORATION COUNSEL
200 East Washington Street, Room 1601
Indianapolis, Indiana 46204
Telephone: (317) 327-4055
Fax: (317) 327-3968