Ules **IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| DEAUNDRE BAKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case no: 1:25-cv-01206-JRS-KMB |
| | ) | |
| CITY OF INDIANAPOLIS, and | ) | |
| AFSCME LOCAL 725, | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANT CITY OF INDIANAPOLIS'S PARTIAL ANSWER TO PLAINTIFF'S AMENDED COMPLAINT

Comes now, Defendant, City of Indianapolis ("the City"), by counsel, and hereby respond to Plaintiff's Amended Complaint [Dkt. 25], as follows. The City of Indianapolis has also filed a Partial Motion to Dismiss Plaintiff's Amended Complaint, such that this Answer should be considered partial to the extent this Court allows any claims to proceed against the City.

1.   Plaintiff Deaundre Baker is a gay man, resident of Marion County, Indiana, a former employee of the Department of Public Works of the City of Indianapolis, and a former member of AFSCME Local 725.

**ANSWER:  The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 1 of Plaintiff's Amended Complaint and therefore denies.**

2.   Defendant City of Indianapolis ("the City") is a government agency that is headquartered and operated in Indianapolis, Indiana. The City operates the Department of Public Works ("DPW"), the department where Plaintiff worked.

**ANSWER:  Admit.**

3.   Defendant AFSCME Local 725 ("Local 725") is a union that is headquartered and operated in Indianapolis, Indiana. Local 725 represents DPW employees and has a collective bargaining agreement with the City.

**ANSWER: Admit.**

**JURISDICTION**

4.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 because Plaintiffs claims arise under the Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.*

**ANSWER: The City does not contest that this Court has jurisdiction based upon Plaintiff's claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981 et seq., and the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq.**

5.     Plaintiff satisfied his obligation to exhaust administrative remedies, having timely filed a charge against the City of Indianapolis with the Equal Employment Opportunity Commission (EEOC) and received a right to sue letter on March 20, 2025.

**ANSWER:  The City denies that Plaintiff timely filed an EEOC Charge to the extent that Plaintiff's alleged facts rely upon facts which were untimely based upon the date of Plaintiff's EEOC Charge or were beyond the scope of such EEOC Charge.  The City further denies that Plaintiff satisfied his obligation to exhaust administrative remedies to the extent that certain claims, or the allegations supporting those claims, were not adequately presented to the EEOC.**

6.     Plaintiff satisfied his obligation to exhaust administrative remedies, having timely filed a charge against Local 725 with the EEOC and received a right to sue letter on March 20, 2025.

**ANSWER:  The above allegation is not leveled against the City and the City lacks knowledge and information to determine the truthfulness of such allegation.  That being the case, the City denies the above paragraph.**

7.     The Court has supplemental jurisdiction over Plaintiffs other claims because they form part of the same case or controversy as Plaintiffs federal claims. 28 U.S.C. § 1367(a).

**ANSWER:  The City does not dispute that the Court may have supplemental jurisdiction over state law claims made against Local 725. However, the City denies that this Court has supplemental jurisdiction over any state law claims made against it because these state law claims are preempted by federal law.**

8.    Venue is proper in the Southern District of Indiana under 28 U.S.C. § 1331(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in Indianapolis, Indiana, which is located in this District.

**ANSWER:  Admit.**

**FACTS**

9.    On August 31, 2020, Plaintiff began his employment with the City as a Maintenance Operations Tech at the Department of Public Works.

**ANSWER:  Admit.**

10.    Plaintiff is gay man.

**ANSWER:  The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 10 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

11.    Plaintiff's supervisor, Tim Robinson, was aware of Plaintiffs sexuality.

**ANSWER:  The City lacks knowledge and information concerning the truth of this allegation as it pertains to what Tim Robinson knew and when he knew it.  That being the case, the City denies such allegation only for lack of knowledge.**

12.    In late October or early November 2020, Robinson approached Plaintiff in the hallway of their workplace ("Garage 3") and grabbed Plaintiff by the genitals.

**ANSWER: Denied.**

13.    Because Robinson was Plaintiff's direct supervisor and Plaintiff feared retaliation by Robinson, Plaintiff did not report the sexual assault.

**ANSWER: The City lacks knowledge and information concerning the truth of this allegation as it pertains to this alleged incident, Plaintiff's perceptions, or Plaintiff's actions.  That being the case, the City denies this paragraph.**

14.     Following his sexual assault of Plaintiff, Robinson made Plaintiff's sexuality a topic of

gossip and mockery among supervisors.

**ANSWER: The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 14 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

15.     While working at Garage 3, coworkers frequently mocked, ridiculed, and insulted Plaintiff

because of his gender and sexuality.

**ANSWER: This allegation is denied to the extent it alleges that a City employee assaulted Plaintiff.  The City lacks knowledge as to Plaintiff's state of mind at this point in litigation, and therefore cannot determine the truthfulness of the rest of the paragraph.  Therefore, such allegation is denied.**

16.     Management at Garage 3 was aware of the harassment and often participated in it.

**ANSWER: Denied.**

17.     Supervisors at Garage 3 frequently insulted Plaintiff because of his gender and sexuality

and called him by slurs, such as "sissy" and "faggot."

**ANSWER: Denied.**

18.     These comments created an abusive environment severe enough to affect Plaintiff's

mental wellbeing.

**ANSWER: The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 18 of Plaintiff's Amended Complaint including the state of Plaintiff's medical wellbeing which would require an expert opinion and therefore denies this paragraph.**

19.     Because of the harassment, Plaintiff began spending more time in the dispatch office,

which was mostly staffed with women, and away from the garage, where most of the

harassment occurred.

**ANSWER: Defendant lacks knowledge or information as to the specifics of Plaintiff's day-to-day activities at the time of this allegation and the reasons he would leave his assigned garage, and therefore cannot determine the truthfulness of such allegation.  Therefore, such allegation is denied.  Such allegation is also denied to the extent it alleges that harassment by City employees occurred.**

20.    On January 8, 2022, while performing his duties as a Maintenance Operations Tech and driving a DPW truck, Plaintiff got into a traffic accident on the highway.

**ANSWER: Admit.**

21.    The accident that injured Plaintiff was caused by a malfunction with the truck.

**ANSWER:  The City lacks personal knowledge and information concerning the details of such alleged accident at this time, or the consequences of such accident, and therefore cannot determine the truthfulness of such allegations.  That being the case, the above paragraph is denied.**

22.    Following the accident, Plaintiff was pinned behind the wheel for around five minutes, until a good Samaritan passerby stopped and helped him from the truck.

**ANSWER:  The City lacks knowledge and information concerning the details of such alleged accident at this time, or the consequences of such accident, and therefore cannot determine the truthfulness of such allegations.  That being the case, the above paragraph is denied.**

23.    Injured, bleeding, and stranded by the road, Plaintiff called dispatch, Robinson and several other DPW personnel who were on duty that day.

**ANSWER:  The City lacks knowledge and information concerning the details of such alleged accident at this time, or the consequences of such accident, and therefore cannot determine the truthfulness of such allegations.  That being the case, the above paragraph is denied.**

24.    None of the individuals on duty, including Robinson, came to assist Plaintiff.

**ANSWER:  The City lacks knowledge and information concerning the details of such alleged accident at this time, or the consequences of such accident, and therefore cannot determine the truthfulness of such allegations.  That being the case, the above paragraph is denied.**

25.    Still stranded and needing medical attention, Plaintiff called another coworker named Pierre Turner, who, despite being off work that day, came to Plaintiff's aid.

**ANSWER:  The City lacks knowledge and information concerning the details of such alleged accident at this time, or the consequences of such accident, and therefore cannot determine the truthfulness of such allegations.  That being the case, the above paragraph is denied.**

26.     Plaintiff later learned that he suffered a concussion, serious back injury, and possibly a stroke due to the accident.

**ANSWER: The City lacks knowledge and information concerning the details of such alleged accident at this time, or the consequences of such accident, and therefore cannot determine the truthfulness of such allegations.  That being the case, the above paragraph is denied.**

27.     Plaintiff has continued to suffer severe back pain since the accident and because of the injuries he sustained during the accident.

**ANSWER: The City lacks knowledge and information concerning the details of such alleged accident at this time, or the consequences of such accident, and therefore cannot determine the truthfulness of such allegations.  That being the case, the above paragraph is denied.**

28.     After the accident, Plaintiff was vigilant about reporting safety concerns when they occurred.

**ANSWER: The City lacks knowledge and information concerning the truth of this allegation, and therefore cannot respond to the truthfulness of such allegation.  Lacking such knowledge, the City denies the above paragraph.**

29.     Supervisors routinely downplayed Plaintiff's safety concerns and ignored his requests because of Plaintiff's sex and sexuality.

**ANSWER:  Denied.**

30.     For instance, on July 26, 2023, Plaintiff told supervisor Tyrone White about issues with a vehicle he was supposed to drive.

**ANSWER:  Denied.**

31.     In response, White cussed at Plaintiff and angrily ripped the keys from Plaintiff's hand, causing his fingers to bleed.

**ANSWER:  Denied.**

32.     Later that day, White proceeded to call Plaintiff a "whining ass nigga," "punk ass nigga," and a "girl."

**ANSWER:  Denied.**

33.     White then wrote up Plaintiff, in which he referred to Plaintiff by a female name, "Danielle Stone," in order to further mock Plaintiff and his sexuality.

**ANSWER:  Denied.**

34.     By insulting Plaintiff's sexuality, by supplying Plaintiff with unsafe equipment, and by refusing to address Plaintiff's safety complaints, White, Robinson, and other supervisors hoped to goad Plaintiff into quitting.

**ANSWER:  Denied.**

35.     Plaintiff reported the incident with White to Local 725 union representative Kenny Stringer.

**ANSWER:  The above paragraph does not appear to be directed towards the City and therefore no response is required.  To the extent a response is required, the City denies the allegations contained within this paragraph.**

36.     Plaintiff also informed Union leadership about the harassment he experienced, but they advised him to lay low and not to grieve the incident.

**ANSWER:  The above paragraph does not appear to be directed towards the City and therefore no response is required.  To the extent a response is required, the City denies the allegations contained within this paragraph.**

37.     Plaintiff notified the union president that he intended to file a charge of sex discrimination with the EEOC.

**ANSWER:  The above paragraph does not appear to be directed towards the City and therefore no response is required.  To the extent a response is required, the City denies the allegations contained within this paragraph.**

38.     On July 27, 2023, Plaintiff grieved the incident with White.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  To the extent that it is made against the City, the City lacks knowledge and information concerning such allegation, and therefore denies for an inability to determine the truthfulness of such allegation.**

39.     Accompanied by Stringer, Plaintiff presented the grievance to White, who tore it in half, while Stringer stood on silently.

**ANSWER:  This allegation is denied to the extent it alleges wrongful or discriminatory conduct by a City employee.  To the extent that the above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis, The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

40.     Local 725 was aware of the sexual harassment against Plaintiff, but failed to represent him in grieving the harassment.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis.  The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

41.     In early December 2023, Robinson told Plaintiff he was being re-assigned to snow plow and salt truck operation for the winter season.

**ANSWER:  The City lacks knowledge and information concerning the specifics of when Plaintiff was informed that he would have to drive a snow plow in the winter season, the context of such information being conveyed, and is therefore unable to determine the truthfulness of the above allegation.  Therefore, for such lack of knowledge, the City denies the above allegation.**

42.     Despite working as a Maintenance Operations Tech since the winter of 2020, Plaintiff had never previously been required to operate a snow plow or salt truck.

**ANSWER:  The City lacks knowledge and information concerning the specifics of Plaintiff's personal perspective and experience.  Therefore, for such lack of knowledge, the City denies the above allegation.**

43.     Because Plaintiff was unfamiliar with the snow plow and salt truck vehicles, Plaintiff requested training on how to operate them.

**ANSWER: The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 43 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

44. During the training, Plaintiff learned that driving the snow plow and salt truck vehicles aggravated the workplace injury he had sustained on January 8, 2022.

**ANSWER: The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 44 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

45. Specifically, the jostling and bouncing of the seats caused by the suspension in the snow plow and salt truck vehicles caused intense sciatic pain in Plaintiff's back and legs.

**ANSWER: The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 45 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

46. On December 12, 2023, Plaintiff texted Robinson, telling him that he could not drive the salt truck without severe pain and asked to be excused from doing so.

**ANSWER:  The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation.  Therefore, for such lack of knowledge, the City denies the above paragraph.**

47. The next day, Robinson texted Plaintiff back, informing Plaintiff that he needed to provide a doctor's note stating that Plaintiff would not be able to drive the salt truck.

**ANSWER:  The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation.  Therefore, for such lack of knowledge, the City denies the above paragraph.**

48. On December 21, 2023, Plaintiff complied with Robinson's instruction and provided a doctor's note stating that he would not be able to ride in the salt truck due to his medical condition.

**ANSWER:  The City lacks knowledge and information concerning the specifics of the above communication or the exact content of such communication.  Therefore, for such lack of knowledge, the City denies the above allegation.**

49. On or around December 27, 2023, Robinson told Plaintiff that Local 725 and the City's human resources department ("HR") were questioning the validity of the doctor's note.

**ANSWER: The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation and therefore denies this paragraph.**

50.     On January 2, 2024, Plaintiff contacted City HR representative Seraph Powell-Burgin and asked why his doctor's note was insufficient.

**ANSWER: The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation. Therefore, for such lack of knowledge, the City denies the above allegation at this time.**

51.     Powell-Burgin responded to Plaintiff's email, but not his question regarding the sufficiency of the doctor's note.

**ANSWER: The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation. Therefore, for such lack of knowledge, the City denies the above allegation at this time.**

52.     Instead, Powell-Burgin required Plaintiff to authorize the City to speak with Plaintiff's physician.

**ANSWER: The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation. Therefore, for such lack of knowledge, the City denies the above allegation at this time.**

53.     Because Plaintiff had already disclosed the details of his disability and provided the City with a note from his physician explaining why he was unable to operate the snow plow vehicle, Powell-Burgin's request to contact Plaintiff's doctor was unnecessary and unwarranted.

**ANSWER: Denied.**

54.     Fearing that his accommodation would not be granted if he failed to grant the City permission to contact his doctor, Plaintiff signed the authorization provided by Powell-Burgin.

**ANSWER:    The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 54 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

55.    Although the authorization allowed the City to contact Plaintiff's doctor, it did not authorize Plaintiff's doctor to release Plaintiff's medical information, nor did the authorization comply with Health Insurance Portability and Accountability Act, 42 U.S.C. § 1320d et seq., regulations ("HIPAA").

**ANSWER:  The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation.  Therefore, for such lack of knowledge, the City denies the above allegation at this time.  The City further denies the above paragraph to the extent that it calls for a legal conclusion.**

56.    HR wrote to Plaintiff's doctor and requested that she answer a form requesting information about the nature of Plaintiff's disability.

**ANSWER:  Denied.**

57.    HR included with its request the deficient authorization signed by Plaintiff.

**ANSWER:  Allegations in this paragraph consist of legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in this paragraph.**

58.    At the request of HR, and despite the deficient authorization provided by the City, Plaintiff's doctor filled out the form, thereby disclosing Plaintiff's private health information without his authorization and in violation of HIPAA.

**ANSWER:  Allegations in this paragraph consist of legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in this paragraph. To the extent that Plaintiff alleges any violations of HIPAA against his own doctor, the City is unable to determine the truthfulness of this allegation.**

59.    In the January 2, 2024, email to Plaintiff, Powell-Burgin claimed, on the one hand, that "driving the snow plow vehicle [wa]s an essential function of [Plaintiff's] position," and

on the other hand, the City was "explor[ing] any/all accommodations to help [Plaintiff] to

perform [his] job duties."

**ANSWER: The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation. Therefore, for such lack of knowledge, the City denies the above allegation at this time. The City denies the above to the extent that it insinuates that the City acted wrongfully or unreasonably through the above alleged conduct.**

60.     The City did not even attempt to provide Plaintiff a reasonable accommodation.

**ANSWER: Allegations in this paragraph consist of legal conclusions that do not require a response. To the extent a response is required, Defendant denies the allegations in this paragraph.**

61.     The City could have easily accommodated Plaintiff by allowing Plaintiff to continue on

barricade truck duty.

**ANSWER: The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 61 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

62.     Additionally, the City did not engage in an interactive process with the Plaintiff or explore

alternative accommodations.

**ANSWER: Denied.**

63.     Instead, the City sought to prove that Plaintiff was not qualified for his job.

**ANSWER: Denied.**

64.     Prior to Plaintiff's request for accommodation, driving a snow plow or salt truck was not

part of the Maintenance Operations Tech job description.

**ANSWER: Denied.**

65.     After Plaintiff's request for accommodation, the City inserted "[p]lows snow (in vehicle

with air ride seats)" to Plaintiff's job description.

**ANSWER: Denied.**

66.    The City inserted operating a snow plow with air ride seats into Plaintiff's job description as pretext for disability discrimination and for the purpose of disqualifying the Plaintiff from his job.

**ANSWER:  Allegations in this paragraph consist of legal conclusions that do not require a response. To the extent a response is required, Defendant denies this paragraph.**

67.    On January 17, 2024, Steve Pruitt, an administrator at the City, informed Plaintiff he was being demoted from Maintenance Operations Tech to Laborer.

**ANSWER:  The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation.  Therefore, for such lack of knowledge, the City denies the above allegation at this time.**

68.    At the same time, Pruitt informed Plaintiff that the City was reducing Plaintiff's pay from $23.93 to $19.62 an hour.

**ANSWER:  The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation.  Therefore, for such lack of knowledge, the City denies the above allegation at this time.**

69.    Pruitt informed Plaintiff that his medical restrictions necessitated the change.

**ANSWER: The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation.  Therefore, for such lack of knowledge, the City denies the above allegation at this time.**

70.    Any medical restrictions Plaintiff may have had did not necessitate reassignment or a demotion, as Plaintiff had been discharging his regular duties without restriction.

**ANSWER:  Denied.**

71.    Simultaneous with the demotion, Plaintiff was also reassigned to a new garage ("the MLK Garage") and involuntarily transferred from second shift to first shift, effective immediately.

**ANSWER:  The City admits that Plaintiff was reassigned to a new garage prior to his termination. The City lacks knowledge and information to determine the truthfulness of the**

specifics of the remaining above allegations. Therefore, for such lack of knowledge, the City denies the remaining allegations at this time.

72.    On January 5, 2024, Plaintiff contacted Local 725 steward Kenny Stringer to ask for advice on how to proceed with this request for accommodations, and Stringer ignored his request.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

73.    On January 11, 2024, Plaintiff again contacted Stringer, and this time, was able to set up a meeting, where Plaintiff explained his request for accommodation, the City's threat to reassign and demote him, and his desire to remain on snow plow duty.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

74.    Stringer responded by promising to "jump on it first thing in the morning" and report back to Plaintiff the next day.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies this paragraph.**

75.    On January 12, 17, and 22, 2024, Plaintiff followed up with Stringer, who did not respond to any of the messages.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies this paragraph.**

76.    On January 17, 2024, Plaintiff sought assistance from Local 725 President Steve Quick, who expressed displeasure with Plaintiff for contacting HR to request an accommodation and for not involving the Union sooner.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies this paragraph.**

14

77.     Behind the scenes, Quick had been working with HR and had consented to Plaintiff's demotion from Maintenance Operations Tech to Laborer and the corresponding cut to Plaintiff's pay.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies this paragraph.**

78.     On January 22, 2024, Plaintiff emailed Quick and Stringer, asking to grieve the demotion.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. To the extent that the above allegation alleges wrongful conduct or violative conduct by the City, such allegations are denied.**

79.     Quick responded by claiming that Plaintiff had "never reach[ed] out to the union and requested representation on any issues," "the union did not demote [Plaintiff]," and that Plaintiff never "requested representation on any issues."

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

80.     These statements were untrue; on or around January 10, 2024, Quick had corresponded with Powell-Burgin, provided her false information, and negotiated the demotion on Plaintiff's behalf.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

81.     When Quick learned that Plaintiff had sought help from a private attorney, Quick told Plaintiff that Local 725 would no longer assist him.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

82. Because of the abrupt and involuntary change in his schedule from second shift to third shift, Plaintiff was unable to attend several days of work.

**ANSWER: The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 82 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

83. Prior to the absences, Plaintiff contacted Pierre Turner, the supervisor at the MLK Garage, and Turner excused the absences.

**ANSWER: The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 83 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

84. On January 29, 2024, Robinson emailed the City payroll department and asked that they change Plaintiff's time card to designate the absences as unexcused, even though Plaintiff's time card had already been signed off on by another supervisor.

**ANSWER: The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 83 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

85. Robinson changed Plaintiff's attendance records to reflect three unexcused absences so that the City would have pretext for disciplinary action.

**ANSWER: Denied.**

86. On or around February 2, 2024, Robinson called a disciplinary meeting with Plaintiff and union representative Theodore Miller.

**ANSWER: Denied.**

87. Robinson presented Plaintiff with three disciplinary write ups, a notice of termination, and a "Last Chance Agreement," which he told Plaintiff to sign.

**ANSWER: Denied.**

88. On February 9, 2024, Robinson accused Plaintiff of failing to clock in on one of the previous work days, and Robinson terminated Plaintiff for it.

**ANSWER: The City admits only that Plaintiff was terminated. The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the remaining above allegation. Therefore, for such lack of knowledge, the City denies the above remaining allegation at this time.**

89.    Failing to clock in is not a discipline worthy offense.

**ANSWER: Denied.**

90.    If Plaintiff did fail to clock in, doing so was not in violation of the Last Chance Agreement.

**ANSWER: Denied.**

91.    Robinson terminated Plaintiff as pretext for discrimination and retaliation against Plaintiff.

**ANSWER: Denied.**

92.    When Plaintiff asked Local 725 for assistance with the demotion, Union leadership refused

to help.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis.  The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

93.    On January 29, 2024, Plaintiff filed a grievance over the demotion, but Local 725 failed to

prosecute it.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis.  The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

94.    Local 725 encouraged Plaintiff to sign the Last Chance Agreement.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis.  The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

95.    Local 725 failed to grieve any of the pretextual write-ups used to justify the Last Chance

Agreement.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis.  The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

96.    When Plaintiff was terminated, Local 725 refused to pursue a grievance or arbitration,

despite the flimsiness of the terminal violation.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

97.     Throughout the demotion, the disciplinary write-ups, and the termination, Local 725 failed

to represent Plaintiff, and instead sided with the employer.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

### COUNT I: SEXUAL HARASSMENT
### (Against Defendant City of Indianapolis)

98.     Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER: The City incorporates all preceding responses by reference.**

99.     Under Title VII of the Civil Rights Act of 1964 ("Title VII"), employees have a right to

work in an environment free of discriminatory harassment that adversely affects the terms,

conditions, and privileges of employment.

**ANSWER: The above is a legal conclusion for which no response is required. To the extent a response may be required, The City denies the allegations contained this paragraph.**

100.    While working for the City, Plaintiff was harassed by DPW management and supervisors

because of his sex and sexual orientation.

**ANSWER: Denied.**

101.    The sexual harassment of Plaintiff was severe or pervasive enough to alter the terms and

conditions of employment, thereby creating a hostile and abusive work environment.

**ANSWER: Denied.**

102.    Throughout Plaintiffs employment, the City lacked an effective preventative policy to

address the abuse that Plaintiff experienced.

**ANSWER: Denied.**

103.    Furthermore, management officials knew about the sexual harassment but failed to respond to the harassment or prevent it.

**ANSWER:  Denied.**

104.    The City's actions were intentional, and it acted with reckless indifference to Plaintiffs rights, as protected by Title VII.

**ANSWER:  Denied.**

105.    As such, the City violated Plaintiffs right to be free from sexual harassment as protected by Title VII.

**ANSWER:  Denied.**

106.    Plaintiff suffered and continues to suffer from unwanted harm, including, but not limited to, emotional and mental distress, embarrassment, humiliation, and damage to his personal and professional reputation, because of City's unlawful discrimination.

**ANSWER:  Denied.**

## COUNT II: SEX DISCRIMINATION
### (Against Defendant City of Indianapolis)

107.    Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER:  The City incorporates all preceding responses by reference.**

108.    Under Title VII, it is unlawful for an employer to discriminate because of sex.

**ANSWER: The above is a legal conclusion for which no response is required.**

109.    Between December 23, 2023, and February 5, 2024, the City issued several disciplinary actions against Plaintiff for alleged attendance issues.

**ANSWER:  The above allegation is too vague to respond to fully.  Defendants admit only that Plaintiff received discipline from the City during period due to attendance policy violations.**

110.    The attendance issues alleged by the City discrimination against Plaintiff on the basis sex and sexual orientation.

**ANSWER:  Denied.**

111.    On February 9, 2024, the City fired Plaintiff, alleging that Plaintiff failed to clock in on a prior work day.

**ANSWER:  Denied.**

112.    The issue with the time clock cited by Robinson was a pretext for Robinson's discriminatory firing of Plaintiff.

**ANSWER:  Denied.**

113.    Robinson terminated Plaintiff because of Plaintiffs sex and sexual orientation.

**ANSWER:  Denied.**

114.    The City's actions were intentional, willful, and in reckless disregard of Plaintiffs established civil rights.

**ANSWER:  Denied.**

115.    As such, the City violated Plaintiffs right to be free from sexual discrimination as protected by Title VII.

**ANSWER:  Denied.**

116.    Plaintiff suffered and continues to suffer from unwanted harm, including, but not limited to, loss of wages and benefits, loss of future earnings, other pecuniary losses, emotional and mental distress, embarrassment, humiliation, and damage to his personal and professional reputation, because of the City's unlawful discrimination.

**ANSWER:  Denied.**

### COUNT III: SEX DISCRIMINATION
### (Against Defendant AFSCME Local 725)

117.    Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER: The City incorporates all preceding responses by reference.**

118.    Under Title VII, it is unlawful for a labor organization to discriminate because of sex.

**ANSWER:   The above is a legal conclusion for which no response is required.**

119.    Local 725 was aware of the hostile work environment perpetuated by the City.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City specifically denies it perpetuated a hostile work environment. The City cannot determine the truthfulness of the remaining allegations, and therefore denies such allegations.**

120.    In July 2023, Plaintiff attempted to grieve the sexual harassment he experienced, but Local 725, refused to prosecute the grievance.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies any sexual harassment alleged by the Plaintiff in this paragraph.**

121.    Local 725 refused to press Plaintiffs grievance because of Plaintiffs sex and sexual orientation.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis.  The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  The City further denies this paragraph the extent alleges wrongful or violative conduct by the City.**

122.    Local 725 was also aware of the City's pretextual disciplinary actions leading up to and culminating in termination of the Plaintiff.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis.  The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

123.    Local 725 refused to grieve the pretextual discipline or Plaintiff because of Plaintiff's sex and sexual orientation.

**ANSWER:  The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis.  The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

124.    As a result, Local 725 discriminated against the Plaintiff and violated Plaintiff's right to be free from sexual discrimination as protected by Title VII.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

125.    Plaintiff suffered and continues to suffer from unwanted harm, including, but not limited to, loss of wages and benefits, loss of future earnings, other pecuniary losses, emotional and mental distress, embarrassment, humiliation, and damage to his personal and professional reputation, because of Local 725's unlawful discrimination.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

## COUNT IV: FAILURE TO ACCOMMODATE
### (Against Defendant City of Indianapolis)

126.    Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER: The City incorporates all preceding responses by reference.**

127.    Under the ADA, employers have a responsibility to reasonably accommodate qualified disabled employees.

**ANSWER:  The above is a legal conclusion for which no response is required.**

128.    Throughout his employment at DPW, Plaintiff was a qualified employee who could perform the essential functions of his job as a Maintenance Operations Tech.

**ANSWER: Denied, as Plaintiff was frequently absent or tardy such that he failed to meet his employer's reasonable expectations or perform the essential functions of his job.**

129.    On January 8, 2022, Plaintiff was permanently disabled in a workplace accident.

**ANSWER:  The City lacks knowledge and information concerning the specifics of such allegation as it relates to the specifics of the alleged disability and the accident in question. Therefore, lacking such knowledge, the allegation above is denied.**

130.    At all relevant times, City managers were aware of Plaintiff's disability.

**ANSWER: The City is without sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 130 of Plaintiff's Amended Complaint and therefore denies this paragraph.**

131.    In December 2023, the City reassigned Plaintiff to operating snow plow and salt truck

vehicles.

**ANSWER:  Defendant lacks knowledge and information concerning the specifics of when and how Plaintiff was informed that his essential job function included driving a snowplow vehicle.  Lacking such knowledge, Defendant denies.**

132.    Because of his disability, Plaintiff was unable to drive the snow plow and salt truck vehicles

without a reasonable accommodation.

**ANSWER: The City lacks knowledge and information concerning Plaintiff's personal perception and abilities, and therefore cannot determine the truthfulness of such allegation. Therefore, such allegation is denied.**

133.    On December 11, 2023, Plaintiff requested reasonable accommodation.

**ANSWER:  The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation.  Therefore, for such lack of knowledge, the City denies the above allegation at this time.**

134.    Throughout December 2023 and January 2024, Plaintiff engaged in the interactive process

in good faith to find a reasonable accommodation.

**ANSWER:  The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation.  Therefore, for such lack of knowledge, the City denies the above allegation at this time.**

135.    The City failed to engage in the interactive process in good faith.

**ANSWER:  Denied.**

136.    The City rejected Plaintiff's proposed accommodation.

**ANSWER:  The City lacks knowledge and information concerning the specifics of the above alleged communication and is therefore unable to determine the truthfulness of the above allegation.  Therefore, for such lack of knowledge, the City denies the above allegation.**

137.    The City declined to excuse Plaintiff from snow plow duty, even though it was not an essential function of his job.

**ANSWER:  Denied.**

138.    The City also failed to offer any alternative accommodation or engage with Plaintiff to come up with an alternative.

**ANSWER: Denied.**

139.    As a direct result of the City's failure to accommodate Plaintiff, Plaintiff was demoted, disciplined, and fired.

**ANSWER:  Denied.**

140.    As such, the City failed to accommodate Plaintiff as required by the ADA.

**ANSWER:  Denied.**

141.    Plaintiff suffered and continues to suffer from unwanted harm, including, but not limited to, loss of wages and benefits, loss of future earnings, emotional and mental distress, embarrassment, humiliation, and damage to his personal and professional reputation, because of the City's unlawful failure to accommodate his disability.

**ANSWER:  Denied.**

## COUNT V: DISABILITY DISCRIMINATION
### (Against Defendant City of Indianapolis)

142.    Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER:  The City incorporates all preceding responses by reference.**

143.    Under the ADA, it is unlawful for an employer to discriminate against disabled individuals.

**ANSWER:   The above is a legal conclusion for which no response is required.**

144.    At all relevant times, City management officials were aware of Plaintiffs disability.

**ANSWER: The above is not specific as to the relevant time or the specific officials or disability in question. The truth of such allegation cannot be determined. Therefore, such allegation is denied.**

145.    At the same time, City managers regarded Plaintiff as disabled based on perceived physical impairments and/or limits on Plaintiff's ability to work.

**ANSWER: The City lacks knowledge and information concerning the specifics of the above allegation is therefore unable to determine the truthfulness of the above allegation. Therefore, for such lack of knowledge, the City denies this paragraph.**

146.    Because of Plaintiffs disability, the City demoted the Plaintiff, transferred him to a less desirable position and shift, and cut his pay.

**ANSWER: Denied.**

147.    Furthermore, the City attributed physical impairments and/or limits on Plaintiff that he did not possess; that is, the City regarded Plaintiff as a disabled.

**ANSWER: The City lacks knowledge and information concerning the specifics of the above allegation is therefore unable to determine the truthfulness of the above allegation. Therefore, for such lack of knowledge, the City denies this paragraph.**

148.    Because of Plaintiffs disability, the City demoted the Plaintiff, transferred him to a less desirable position and shift, and cut his pay.

**ANSWER: Denied.**

149.    As a direct result of the City's failure to accommodate the Plaintiff and its discriminatory demotion, Plaintiff was disciplined and fired.

**ANSWER: Denied.**

150.    As such, the City discriminated against Plaintiff because of Plaintiffs disability, in violation of the ADA.

**ANSWER: Denied.**

151.    Plaintiff suffered and continues to suffer from unwanted harm, including, but not limited to, loss of wages and benefits, loss of future earnings, emotional and mental distress,

embarrassment, humiliation, and damage to his personal and professional reputation, because of the City's unlawful discrimination.

**ANSWER:  Denied.**

## COUNT VI: INTERFERENCE
### (Against Defendant City of Indianapolis)

152.    Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER:  The City incorporates all preceding responses by reference.**

153.    Under the ADA, it is unlawful for an employer to coerce, intimidate, threaten, or interfere with an individual's exercise of his rights under the ADA.

**ANSWER:   The above is a legal conclusion for which no response is required.**

154.    The ADA also prohibits inquiries into the nature or severity of an employee's disability unless the inquiry is job-related and consistent with a business necessity.

**ANSWER:   The above is a legal conclusion for which no response is required.**

155.    The City's inquiry into Plaintiff's medical condition was not job-related or a business necessity because driving a snow plow or salt truck vehicle was not among Plaintiff's essential job functions.

**ANSWER: Denied.**

156.    Additionally, the City's inquiry was not job-related or a business necessity because Plaintiff had already provided medical documentation establishing his inability to drive a snow plow or salt truck vehicle without some sort of accommodation.

**ANSWER: Denied.**

157.    The City coerced, intimidated, threatened, and/or interfered with Plaintiff's exercise of his rights under the ADA by requiring Plaintiff to authorize unnecessarily inquiries into the nature or severity of his disability.

**ANSWER: Denied.**

158.    The City also coerced, intimidated, threatened, and/or interfered with Plaintiff's exercise of rights under the ADA by involuntarily transferring, demoting, and cutting the pay of Plaintiff in response to his exercise of his rights under the ADA.

**ANSWER: Denied.**

159.    Plaintiff suffered and continues to suffer from unwanted harm, including, but not limited to, loss of wages and benefits, loss of future earnings, emotional and mental distress, embarrassment, humiliation, and damage to his personal and professional reputation, because of the City's interference with his rights under the ADA.

**ANSWER: Denied.**

## COUNT VI: RETALIATION
### (Against Defendant City of Indianapolis)

160.    Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER: The City incorporates all preceding responses by reference.**

161.    The ADA prohibits discrimination against individuals on the basis that they opposed an act or practice made unlawful by the ADA or otherwise exercised their rights under the ADA.

**ANSWER: The above is a legal conclusion for which no response is required.**

162.    By requesting a reasonable accommodation, Plaintiff engaged in protected activity under the ADA.

**ANSWER: The above is a legal conclusion for which no response is required.**

163.    Because of Plaintiff's protected activity, the City demoted Plaintiff, transferred him to a less desirable position and shift, and cut his pay.

**ANSWER: Denied.**

164. On January 29, 2024, Plaintiff grieved the demotion; this, too, was protected activity under the ADA.

**ANSWER: The above is a legal conclusion for which no response is required.**

165. On February 9, 2024, the City terminated Robinson in retaliation for his protected activity under the ADA.

**ANSWER: Denied.**

166. Thus, the City retaliated against Plaintiff in violation of the ADA.

**ANSWER: Denied.**

167. Plaintiff suffered and continues to suffer from unwanted harm, including, but not limited to, loss of wages and benefits, loss of future earnings, emotional and mental distress, embarrassment, humiliation, and damage to his personal and professional reputation, because of the City's unlawful retaliation.

**ANSWER: Denied.**

### COUNT VII: RETALIATION
### (Against AFSCME Local 725)

168. Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER: The City incorporates all preceding responses by reference.**

169. Under the ADA, it is unlawful for a labor organization to discriminate against individuals on the basis of disability with regard to the terms or conditions of employment.

**ANSWER: The above is a legal conclusion for which no response is required.**

170. Local 725 regarded Plaintiff as disabled based on perceived physical impairments and/or limits on Plaintiff's ability to work.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

171.    Because Local 725 regarded Plaintiff as disabled, Local 725 recommended Plaintiff for a demotion, involuntary transfer and reduction in pay, and it worked with and aided the city in effectuating those changes to the terms and conditions of Plaintiff's employment.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

172.    As such, Local 725 discriminated against Plaintiff because of Plaintiff's disability or perceived disabled status, in violation of the ADA.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

173.    As a direct result of the discriminatory demotion, Plaintiff was disciplined and fired.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.**

174.    Plaintiff suffered and continues to suffer from unwanted harm, including, but not limited to, loss of wages and benefits, loss of future earnings, emotional and mental distress, embarrassment, humiliation, and damage to his personal and professional reputation, because of Local 725's unlawful discrimination.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

### COUNT VIII: INTERFERENCE
### (Against AFSCME Local 725)

175.    Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER: The City incorporates all preceding responses by reference.**

176.    Under the ADA, it is unlawful for a labor organization to coerce, intimidate, threaten, or interfere with an individual's exercise of his rights under the ADA.

**ANSWER:  The above is a legal conclusion for which no response is required.**

177.    By requesting reasonable accommodations, seeking assistance from union representatives, engaging with legal counsel, grieving the discriminatory and retaliatory demotion, and otherwise opposing discrimination, Plaintiff exercised his rights under the ADA.

**ANSWER: The City cannot determine the truthfulness of the above allegation, and therefore denies this paragraph.**

178.    Local 725 was aware of Plaintiff's exercise of his rights under the ADA, and it coerced, intimidated, threatened, and/or interfered with Plaintiff's exercise of those rights.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

179.    By ignoring Plaintiff's pleas for assistance and instead providing support to the City's decision to transfer, demote, and cut Plaintiff's pay, Local 725 coerced, intimidated, threatened, and interfered with Plaintiff's exercise of his rights under the ADA.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

180.    Plaintiff suffered and continues to suffer from harm because of Local 725's unlawful interference, including, but not limited to, loss of wages and benefits, loss of future earnings, emotional and mental distress, embarrassment, humiliation, and damage to his personal and professional reputation.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

## COUNT IX: RETALIATION
### (Against AFSCME Local 725)

181.    Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER:  The City incorporates all preceding responses by reference.**

182.    By requesting reasonable accommodations, seeking assistance from union representatives, engaging with legal counsel, grieving the discriminatory and retaliatory demotion, and otherwise opposing discrimination, Plaintiff exercised his rights under the ADA.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

183.    Local 725 leadership was displeased with Plaintiff's exercise of his rights under the ADA, and it refused to help Plaintiff obtain reasonable accommodation because of it.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

184.    As a direct result of Local 725's retaliation, Plaintiff was not accommodated, and demoted, disciplined, and ultimately fired.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

185.    Local 725 also refused to press Plaintiff's meritorious grievances against the City in retaliation for Plaintiff's exercise of his rights under the ADA.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation.  The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

186.    In doing so, Local 725 retaliated against Plaintiff in violation of the ADA.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

187. Plaintiff suffered and continues to suffer from unwanted harm, including, but not limited to, loss of wages and benefits, loss of future earnings, emotional and mental distress, embarrassment, humiliation, and damage to his personal and professional reputation, because of Local 725's unlawful retaliation.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

## COUNT X: BREACH OF CONTRACT
### (Against the City of Indianapolis)

188. Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER: The City incorporates all preceding responses by reference.**

189. Plaintiff was an intended third-party beneficiary of the collective bargaining agreement ("CEA") between the City and Local 725.

**ANSWER: The above is a legal conclusion for which no response is required. To the extent that a response is required, the City denies this paragraph.**

190. Plaintiff knew of the rights and benefits the CBA provided to Local 725 members and assented to the contract by accepting a job at DPW, signing a union authorization card, and paying union dues.

**ANSWER: The City lacks knowledge and information concerning the above allegation concerning Defendant's union status or knowledge and cannot determine the truthfulness of such allegation. Therefore, the above paragraph is denied.**

191. The City denied Plaintiff the benefits promised to him in the CBA, including, but not limited to:

　　a.　　Refraining from arbitrary and capricious discipline;

b.      Providing a designated Union representative to be present during the demotion meeting;

c.      Accepting and recognizing grievances submitted by the Plaintiff;

d.      Acting in good faith to settle Plaintiffs meritorious grievances;

e.      Adhering to the provisions involving involuntary transfers;

f.      Allowing use of Plaintiffs earned and accrued benefit leave pay;

g.      Adhering to the CBA's non-discrimination policy; and

h.      Investigating and remedying hazardous working conditions.

**ANSWER: Denied.**

192.    By denying Plaintiff benefits under the CEA, the City breached its contract with Local 725, as applied to Plaintiff.

**ANSWER: Denied.**

193.    Plaintiff suffered and continued to suffer harm, including but not limited to loss of wages and benefits, a result of the City's breach of the CBA.

**ANSWER: Denied.**

## COUNT XI: BREACH OF CONTRACT
### (Against AFSCME Local 725)

194.    Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER: The City incorporates all preceding responses by reference.**

195.    Local 725 denied Plaintiff the benefits promised to him in the CBA, including, but not limited to:

a.      Providing a designated union representative to be present during the demotion meeting;

b.      Acting in good faith to settle Plaintiffs meritorious grievances; and

c.      Adhering to the CBA's non-discrimination policy.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

196.    By denying Plaintiff benefits under the CBA, Local 725 breached its contract with the City, as applied to Plaintiff.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

197.    Plaintiff suffered and continued to suffer harm, including but not limited to loss of wages and benefits, a result of Local 725's breach of the CBA.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

### COUNT XII: BREACH OF DUTY OF FAIR REPRESENTATION
### (Against AFSCME Local 725)

198.    Plaintiff hereby incorporates all preceding paragraphs by reference.

**ANSWER:  The City incorporates all preceding responses by reference.**

199.    Local 725 owed Plaintiff a duty to fairly represent the Plaintiff and enforce the CBA between the City and Local 725.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.**

200.    Local 725 arbitrarily, capriciously, and without just or reasonable cause failed to fairly represent Plaintiff, to secure Plaintiff the benefits owed to him under the CBA, and to press Plaintiff's grievances against the City.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and**

therefore denies such allegation. The City further denies this paragraph to the extent it alleges wrongful or violative conduct by the City.

201.    As a direct result of Local 725's breach of the duty of fair representation, Plaintiff suffered

harm.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. Denied to the extent that it alleges wrongful or violative conduct by the City.**

202.    But for Local 725's breach of duty, the harm to Plaintiff would not have occurred.

**ANSWER: The above allegation is made against Co-Defendant AFSCME 725, not the City of Indianapolis. The City cannot determine the truthfulness of the above allegation, and therefore denies such allegation. Denied to the extent that it alleges wrongful or violative conduct by the City.**

203.    Plaintiff seeks all available remedies, including but not limited to, as follows:

a. A final judgment declaring that the actions of Defendants as described herein violate the

law as alleged;

b. An award of actual damages, compensatory damages, consequential damages, and statutory

damages and penalties, in an amount to be determined and as allowable by law;

c. An award of reinstatement or front pay;

d. An award of contractual damages for the City's breach of the CBA and Local 725's breach

of its fiduciary duties;

e. An award of punitive damages, as allowable by law;

f. An award of attorneys' fees and the costs of litigating this action;

g. Pre-and post-judgment interest on any amounts awarded; and

h. Any other relief available as this Court may deem just and proper.

**ANSWER: Plaintiff's prayers for relief should not be granted, and several of them are improper prayers for relief pursuant to the alleged causes of action in this case. The City further denies this paragraph to the extent it calls for legal conclusions.**

**<u>AFFIRMATIVE DEFENSES</u>**

1. The Plaintiff has failed to state a claim upon which relief may be granted.

2. This Court lacks subject matter jurisdiction over Plaintiff's state law breach of contract claims brought against the City.

3. To the extent that any claim was not timely made within Plaintiff's Charge of Discrimination, they are barred.

4. The Plaintiff failed to mitigate his damages as required under state law.

5. The Plaintiff may have received payments from other persons or companies which constitute an accord, satisfaction, and/or collateral source set-off to any judgment the Plaintiff may obtain against the City pursuant to Ind. Code § 34-44-1-1 *et seq.*

6. The Plaintiff's claims are barred to the extent that he waived any such claims by his actions or inactions.

7. The Plaintiff is barred from recovering any damages to the extent such damages were proximately caused by Plaintiff's contributory negligence or failure to meet the reasonable expectations of the City as his former employer.

8. The Plaintiff is barred from recovering any damages to the extent they were proximately caused by the actions or inactions of a non-party.

9. The Plaintiff's claims are barred to the extent they are untimely pursuant to Ind. Code § 34-11-2-4.

10. The Defendant acted in accordance with its authority pursuant to state and federal law.

11. The Plaintiff's recovery, if any, is limited by Ind. Code §§ 34-13-3-4, 34-13-4-1, and Revised Code of Ordinances § 292-1(c).

12. The Plaintiff's recovery, if any is limited by 42 U.S.C. § 1981a(b)(3).

13. The alleged injuries and/or damages of which the Plaintiff complains were the proximate cause of the risk voluntarily incurred and/or assumed by the Plaintiff.

14. The Plaintiff's claims, in whole or in part, are barred to the extent he lacks standing.

15. The Plaintiff's claims are estopped under the doctrines of collateral estoppel or res judicata to the extent the claims or issues have been previously litigated.

16. The Plaintiff's claims are estopped to the extent the doctrine of judicial estoppel applies.

17. Ind. Code § 34-51-4-4 bars any claim for prejudgment interest.

18. The Plaintiff's claims for punitive damages against a governmental entity under state or federal law are barred, and the Plaintiff is not entitled to punitive damages on any claims against the City.

19. The City is entitled to any statutory and/or common law immunity applicable to the Plaintiff's claims under federal and state law, including qualified immunity.

20. The City denies any paragraph of the Plaintiff's Complaint not admitted, controverted, or denied above.

21. The City reserves the right to raise any other defenses which may become available or apparent as this case proceeds.

WHEREFORE, the City of Indianapolis prays that Plaintiff take nothing by way of his Amended Complaint and for all other just and proper relief.

Respectfully Submitted,

OFFICE OF CORPORATION COUNSEL

/s/ Brandon Newhart
Brandon Newhart (31438-71)
Assistant Corporation Counsel
200 E. Washington Street, Suite 1601
Indianapolis, Indiana 46204
T: (317) 327-4055
F: (317) 327-3968
Brandon.Newhart@indy.gov

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed on this Tuesday, October 28, 2025, through the ECF E-Filing System and that the following Party was served via the court's ECF system:

Mary Kate Dugan
PARRHESIA LAW, LLC
2022 N. Riley Ave
Indianapolis, Indiana 46218
marykate@parrhesialaw.com

Robert A. Hicks
MACEY SWANSON HICKS & SAUER
429 N. Pennsylvania Street, Suite 204
Indianapolis, IN 46204-1800
rhicks@maceylaw.com

*/s/ Brandon Newhart*
Brandon Newhart (31438-71)
Assistant Corporation Counsel

OFFICE OF CORPORATION COUNSEL
200 East Washington Street, Room 1601
Indianapolis, Indiana 46204
Telephone: (317) 327-4055
Fax: (317) 327-3968