UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DEAUNDRE BAKER,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF INDIANAPOLIS,<br>AFSCME LOCAL 725,<br>TIMOTHY ROBINSON,<br>STEVEN PRUITT,<br>STEVEN QUICK,<br><br>Defendants. | ) | No. 1:25-cv-01206-JRS-KMB |

**Order on Partial Motion to Dismiss**

Plaintiff Deaundre Baker filed a Second Amended Complaint against Defendants City of Indianapolis and AFSCME Local 725 ("Union") alleging violations of Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e–2000e17; the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213; his right to due process under 42 U.S.C. § 1983; breach of contract; and breach of fiduciary duty. (*See* Compl., ECF No. 1.) Baker's Second Amended Complaint also alleged that Defendants Timothy Robinson, manager at the Department of Public Works of the City of Indianapolis ("DPW"); Steven Pruitt, administrator at DPW; and Steven Quick, Union president, violated his right to due process under 42 U.S.C. § 1983. (*See* Second Am. Compl., ECF No. 52.)

Defendants City of Indianapolis, Timothy Robinson, and Steven Pruitt ("City Defendants") now move to dismiss four of Baker's claims against the City of Indianapolis[1]: (1) sexual harassment and sex discrimination in violation of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (Counts I and II); (2) interference in violation of the Americans with Disabilities Act, 42 U.S.C. § 12203(b) (Count VI); and (3) breach of contract under Indiana law (Count VII).[2] (Partial Mot. to Dismiss 1, ECF No. 57.) The City Defendants' Motion also seeks to strike Baker's request for punitive damages against the City. (*Id.* at 2.) For the following reasons, the Court **grants in part** and **denies in part** the City Defendants' Motion.

## I. Factual Background

At this stage, the Court "accept[s] all well-pleaded facts as true and draw[s] reasonable inferences in the [P]laintiff['s] favor." *Roberts v. City of Chicago*, 817 F.3d 561, 564 (7th Cir. 2016). Baker is a gay man formerly employed by the DPW and a former member of the Union. (Second Am. Compl. ¶ 1, ECF No. 52.) The City of Indianapolis is the government agency that operates the DPW. (*Id.* ¶ 2.) The Union represents employees of the DPW and has a collective bargaining agreement ("CBA") with the City of Indianapolis. (*Id.* ¶ 3.)

---

[1] The City Defendants collectively move to dismiss these four claims. However, the claims that the City Defendants seek to dismiss are asserted only against the City of Indianapolis, not Timothy Robinson and Steven Pruitt. Regardless, the Court refers to the Motion and accompanying brief as the City Defendants', rather than just the City of Indianapolis'.

[2] Baker's Second Amended Complaint contains two claims labeled "Count VII": an ADA interference claim asserted against the Union, (*see* Second Am. Compl ¶¶ 308–13, ECF No. 52), and the breach of contract claim asserted against the City of Indianapolis, (*see id.* ¶¶ 314–20.) For purposes of this Order, when the Court refers to "Count VII," it is referring to the breach of contract claim unless otherwise noted.

### ***Unwanted Sexual Touching and Anti-Gay Comments by Supervisors***

Baker began working for the DPW as a Maintenance Operations Tech on August 31, 2020. (*Id.* ¶ 9.) Baker's supervisor, Timothy Robinson, was aware of Baker's sexuality. (*Id.* ¶ 11.) Around September 2020, Robinson started asking Baker about his sexuality and relationship with the DPW employee who had referred him for the position. (*Id.* ¶ 12.) In November 2020, Robinson grabbed Baker by his genitals in the hallway of their workplace. (*Id.* ¶ 13.) Baker did not report the incident out of fear of retaliation. (*Id.* ¶ 14.) After the November 2020 incident, Robinson made Baker's sexuality a topic of gossip and mockery among supervisors. (*Id.* ¶ 15.) Supervisors frequently insulted Baker because of his gender and sexuality, calling him slurs such as "sissy" and "faggot." (*Id.* ¶ 16.) These verbal and physical acts caused Baker to become "highly anxious" and "hypervigilant." (*Id.* ¶ 18.)

As a Maintenance Operations Tech, Baker required a working vehicle to carry out his assignments. (*Id.* ¶ 60.) Servicing vehicles was not a required duty of Maintenance Operation Techs, but Baker's supervisors frequently assigned him to vehicles that did not function properly and required him to perform maintenance on the vehicle. (*Id.* ¶¶ 61, 63.) When Baker took his concerns regarding safety and vehicle maintenance to supervisors, he was ignored, mocked, and disciplined for failing to go out on assignments despite there being no functioning vehicles available. (*Id.* ¶¶ 64–65.) Baker's supervisors attributed his concerns to his sexuality, citing stereotypes about the femininity and "softness" of gay men. (*Id.* ¶ 66.)

One such instance occurred on July 26, 2023, when Baker reported to Supervisor Tyrone White that Baker's vehicle was not functioning properly. (*Id.* ¶ 67.) White suggested that Baker "wiggle some wires" to fix the truck, which led to an argument that ended with White ripping the keys from Baker's hand, causing Baker's fingers to bleed. (*Id.* ¶¶ 68–69.) When Baker scolded White, White responded by calling Baker a "whining ass ni***," "punk ass ni***," and a "girl." (*Id.* ¶ 70.) White then wrote up Baker for engaging in a "work stoppage." (*Id.* ¶ 71.) In the disciplinary report, White referred to Baker as "Danielle Stone," a female name, to mock Baker for his gender and sexuality. (*Id.* ¶ 72.) When Baker told the Union that he wanted to file a grievance, President Steven Quick encouraged him to "lay low" rather than file a grievance. (*Id.* ¶ 77.) Baker disregarded this advice and presented White with the grievance himself, who tore it up in front of him. (*Id.* ¶ 80.)

***Workplace Accident and Accommodation Request***

On January 8, 2022, Baker was involved in an automobile accident while driving a DPW truck. (*Id.* ¶ 19.) He was diagnosed with a concussion, serious back injury, and possible stroke following the accident. (*Id.* ¶ 35.) After he lost consciousness during a shift, (*id.* ¶ 38), a doctor determined that he could return to work, but needed to restrict his mobility, (*id.* ¶ 40.) However, Robinson and Quick denied his request for a back brace. (*Id.* ¶ 42.) On July 17, 2022, Baker experienced an episode of severe neck and back pain, causing him to lose consciousness and hit his head. (*Id.* ¶ 49.) Two days later, City human resources manager Seraph Powell-Burgin expressed disbelief to Baker that the fainting episode could have been caused by his accident.

(*Id.* ¶¶ 52–53.) Baker filed a grievance against Powell-Burgin, Robinson, Quick, and other Union and City personnel based on this incident. (*Id.* ¶ 52.)

In December 2023, Robinson informed Baker that he was being assigned to operate a snow vehicle for the winter season. (*Id.* ¶ 91.) Baker quickly realized that the jostling and bouncing caused by the air suspension system on the snow vehicle aggravated his injury from the accident, sending "excruciating nerve pain through [his] back and legs." (*Id.* ¶¶ 94–95.) Baker asked Robinson to be excused from driving snow vehicles and provided a doctor's note stating that his physical impairment prevented him from driving a vehicle with the air suspension system. (*Id.* ¶¶ 96–98.)

Robinson informed Baker that the Union and City human resource departments questioned the validity of the doctor's note. (*Id.* ¶ 99.) Powell-Burgin told Baker to sign a privacy waiver to authorize the City to speak with his physician regarding his requested accommodation. (*Id.* ¶ 105.) Baker feared his accommodation would be denied if he did not sign the waiver, so he signed it. (*Id.* ¶ 108.) Powell-Burgin contacted Baker's physician requesting further information regarding Baker's disability. (*Id.* ¶¶ 109, 111.) Baker's physician reaffirmed that Baker was unable to drive or ride in a vehicle using the air suspension system found in the City's snow vehicles. (*Id.* ¶ 112.) After receiving the response from Baker's physician, Powell-Burgin again accessed Baker's medical records from his workers' compensation claim. (*Id.* ¶ 114.)

***Demotion Meeting and Attendance Discipline***

On January 17, 2024, approximately one month after Baker requested accommodation to not ride the snow vehicles, Steven Pruitt told Baker that the City was demoting him from Maintenance Operations Tech to Laborer and reducing his pay from $23.93 per hour to $19.62 per hour. (*Id.* ¶¶ 133–134.) Pruitt explained that Baker had permanent restrictions limiting him to working eight hours per day and, therefore, could not work the twelve-hour shifts that may be required of a Maintenance Operations Tech. (*Id.* ¶ 135.) Baker did not have such restrictions and had not requested accommodation relating to his working hours. (*Id.* ¶ 136.) Additionally, as a Laborer, Baker would be required to perform physical labor far more demanding than that required by Baker's previous position. (*Id.* ¶ 137.) Pruitt also informed Baker that he would be reassigned from third to second shift and transferred to a different garage. (*Id.* ¶ 141.)

Baker was not accompanied by a Union representative during this meeting. (*Id.* ¶ 139.) Pruitt neither asked Baker if he wanted a Union representative to be present nor offered Baker a waiver stating that he declined Union representation. (*Id.* ¶ 140). Baker did not know Pruitt planned to demote him during this meeting but, had he known, he would have asked for representation. (*Id.* ¶¶ 138–139.)

Following his demotion and shift transfer, Robinson began involving himself in Baker's supervision, despite Supervisor Turner's direct responsibility over Baker. (*Id.* ¶ 160.) Robinson asked human resources to designate several of Baker's absences in January 2024 as unexcused, though Turner had approved of the absences and the CBA allowed up to three paid days off per month without notifying a supervisor. (*Id.*

¶¶ 163, 172.) Robinson accused Baker of being absent or tardy without notice on five occasions in January 2024. (*Id.* ¶ 165.) On February 2, 2024, Robinson called Baker to a disciplinary meeting and presented him with a "Last Chance Agreement." (*Id.* ¶¶ 211–213.) The Last Chance Agreement contained inaccuracies related to Baker's alleged infractions and stated that any additional violations of the attendance policy would result in termination. (*Id.* ¶¶ 214–216.)

On two other instances, Supervisor White disciplined Baker for poor attendance without merit. (*Id.* ¶¶ 115–25.) On December 29, 2023, White disciplined Baker for allegedly arriving sixteen minutes late the day before Christmas Eve, but the discipline lacked merit. (*Id.* ¶¶ 115, 117.) On January 16, 2024, White gave Baker notice that he had failed to report on January 13, 2024, but Baker had obtained permission to take that day off. (*Id.* ¶¶ 119, 123.)

On February 9, 2024, Robinson terminated Baker for allegedly failing to clock in on February 7, 2024. (*Id.* ¶ 226.) An administrative law judge found that Baker had not been tardy or absent on that day, and that several other alleged absences had been excused. (*Id.* ¶¶ 234, 241.)

***EEOC Charge***

Baker filed a formal Charge of Discrimination with the United States Equal Employment Opportunity Commission ("EEOC") on May 17, 2024. (*See* EEOC Charge, ECF No. 17-1.) The charge alleged discrimination based on race, sex, disability, and retaliation. (*See id.*) Specifically, the charge described the July 26, 2023, incident with White and stated that White made "harassing statement[s] . . . to

mock [his] sexual orientation." (*Id*. at 1.) The charge also recounted Baker's attempt to get accommodation after being assigned to the snow vehicle and his subsequent demotion to Laborer by Pruitt. (*Id*. at 2.) It also described the unmeritorious attendance discipline by Robinson. (*Id*. at 2–3.) Finally, the charge stated that Baker believed that he was "discriminated against because of . . . [his] sexual orientation." (*Id*. at 3.) Baker received a right to sue letter on March 20, 2025. (Second Am. Compl. ¶ 5, ECF No. 52.)

## II. Legal Standard

A Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted challenges "the legal sufficiency of a complaint" under Rule 8(a)'s standards. *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 806 (7th Cir. 2020). Under Rule 8(a), a complaint must contain a short and plain statement showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). The claim must be facially plausible; that is, it must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

When considering a motion to dismiss for failure to state a claim, the Court takes all well-pleaded factual allegations in the complaint as true and draws reasonable inferences in Plaintiff's favor. *Iqbal*, 556 U.S. at 678; *Roberts*, 817 F.3d at 564. The Court need not accept the truth of legal conclusions, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## III. Discussion

The City Defendants move to dismiss the following claims against the City: the sexual harassment and sex discrimination claims under Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a); the interference claim under the Americans with Disabilities Act, 42 U.S.C. § 12203(b); and the breach of contract claim. The Court considers the dismissal of these claims in turn.

### A. Sexual Harassment and Sex Discrimination

In Counts I and II, Baker claims that the City of Indianapolis violated Title VII of the Civil Rights Act of 1964 by discriminating against and harassing him on account of his sexual orientation such that he was subjected to a hostile work environment. (Second Am. Compl. ¶¶ 246–279, ECF No. 52.) The City Defendants argue that these claims must be dismissed because the facts that Baker relies upon are time-barred or beyond the scope of his EEOC charge. (Defs.' Br. 7, No. 58.)

#### *1. Time-Bar*

Because Indiana is a "deferral state," meaning it has a state agency with enforcement powers parallel to the EEOC, Baker has 300 days from the alleged unlawful employment practice to file a timely charge under Title VII. *See* 42 U.S.C. § 2000e–5(e)(1); 29 C.F.R. § 1601.80; *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009). Baker filed his EEOC charge on May 17, 2024. (*See* EEOC Charge, ECF No. 17-1.) Accordingly, the City Defendants argue that any alleged facts occurring before July 19, 2023,[3] are time-barred because Baker did not include them

[3] Defendants incorrectly stated that Baker filed his EEOC charge on May 14, 2024, and thus the 300-day window begins on July 19, 2023. (Defs.' Br. 8, ECF No. 58.) However, Baker

in the EEOC charge. Under the City Defendants' argument, allegations that Robinson groped Baker and that supervisors regularly gossiped about his sexuality and used anti-gay slurs could not be offered to support the hostile work environment claim. (Defs.' Br. 9, ECF No. 58.) The Court disagrees with the City Defendants.

While "discrete discriminatory actions are not actionable if time barred, even when they are related to acts alleged in timely filed charges," *Adams v. City of Indianapolis*, 742 F.3d 720, 730 (7th Cir. 2014), "[h]ostile [work] environment claims are different in kind from discrete acts." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 115 (2002). When bringing a hostile work environment claim, "[Baker] may refer to hostile acts that occurred earlier, because 'the entire hostile work environment encompasses a single unlawful employment practice.'" *Pruitt v. City of Chicago*, 472 F.3d 925, 927 (7th Cir. 2006) (quoting *id*. at 117). Accordingly, Baker only needs to file his federal claim within "300 days of *any act* that is part of the hostile work environment." *Morgan*, 536 U.S. at 118 (emphasis added). "[The] [C]ourt's task is to determine whether the acts about which [Baker] complains are part of the same actionable hostile work environment practice, and if so, whether any act falls within the statutory time period." *Id*. at 120.

*First*, the acts Baker challenges are part of the same hostile work environment. "A work environment is hostile under Title VII when the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or

---

filed his EEOC charge on May 17, 2024, meaning the 300-day window begins on July 22, 2023. (*See* EEOC Charge, ECF No. 17-1.) This difference is immaterial to the outcome of City Defendants' Motion.

pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Scaife v. United States Dept. of Veterans Affs.*, 49 F.4th 1109, 1115 (7th Cir. 2022) (citation modified). "Acts . . . so discrete in time or circumstances that they do not reinforce each other cannot reasonably be linked together into a single" hostile work environment. *Lucas v. Chicago Transit Auth.*, 367 F.3d 714, 727 (7th Cir. 2004) (quoting *Tinner v. United Ins. Co. of Am.*, 308 F.3d 697, 708 (7th Cir. 2002).

Baker claims that the hostile work environment began in 2020 when his then-supervisor Robinson regularly asked him intrusive questions about his sexuality and once grabbed him by the genitals in the workplace. (Second Am. Compl. ¶¶ 11–13, ECF No. 52.) He claims that this physical assault was a catalyst for subsequent harassment and that, after the assault, his sexuality became a consistent topic of gossip and mockery amongst the supervisors. (*Id.* ¶¶ 15–16, 66.) Baker further alleges that several instances of discipline by supervisors during his time at DPW were pretextual and were motivated by "animus towards [him] because of [his] sexuality and lack of conformity with gender norms." (*Id.* ¶¶ 115–25, 160–72, 263–64.) The environment perpetuated by the supervisors culminated in the July 26, 2023, incident where Supervisor White called Baker a "girl" and wrote him up using a female name. (*Id.* ¶¶ 68–72.)

Viewed in the light most favorable to Baker, it is reasonable to consider the acts about which Baker complains, which "were perpetuated by the same supervisors, occurred relatively frequently, and were the same types of employment actions," to

be part of the same actionable hostile work environment. *Jumper v. Ind. State Police Dept.*, No. IP 00-1929-C, 2002 WL 31399094, at *15 (S.D. Ind. Sep. 30, 2002); *see also Corona v. City of Chicago*, No. 21 CV 6777, 2023 WL 5671661, at *4 (N.D. Ill. Aug. 31, 2023) (allegations that co-workers repeatedly subjected plaintiff to harassment based on her sex plausibly state hostile work environment claim); *cf. Lucas*, 367 F.3d at 727 (initial encounter and altercation occurring three years later "with no incidents during the intervening years" are not part of the same hostile work environment). "When a single managerial staff or chain of command decides to permit [supervisors] to make life miserable for [a gay man], that is a single unlawful practice." *Bright v. Hill's Pet Nutrition*, 510 F.3d 766, 768 (7th Cir. 2007).

*Second*, because the July 26, 2023, incident with Supervisor White occurred within the 300-day window, the Court may consider the entire period of the hostile work environment. *See Morgan*, 536 U.S. at 117.

***2. Scope of the EEOC Charge***

Next, the City Defendants argue that the Court should disregard factual allegations that were not included in or encompassed by Baker's EEOC charge. (Defs.' Br. 10, ECF No. 58.) Specifically, they ask the Court to disregard allegations that Robinson groped Baker, supervisors gossiped about Baker's sexuality, and supervisors pervasively used anti-gay slurs. (*Id.*)

"As a general rule, a Title VII [P]laintiff cannot bring claims in a lawsuit that were not included in [his] EEOC charge." *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994). However, "because most EEOC charges are completed by laypersons

rather than lawyers, [Baker] need not allege in [his] EEOC charge each and every fact that combined to form the basis of each claim in [his] complaint." *Id.* Rather, all Title VII claims set forth in Baker's Second Amended Complaint are cognizable that are "like or reasonably related to the allegations of the charge and growing out of such allegations." *Id.* (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins. Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)). This is satisfied if there is a "reasonable relationship" between the allegations in Baker's charge and federal complaint and if the claims in the federal complaint could "reasonably be expected to grow out of an EEOC investigation of [his charge]." *Id.* An allegation in the EEOC charge is reasonably related to the federal claim if it involves "the *same conduct* and implicate[s] the *same individuals*." *Id.* at 501. This "grants [Baker] significant leeway." *Id.* at 500; *see also Huri v. Off. of the Chief Judge of the Cir. Ct. of Cook Cnty.*, 804 F.3d 826, 831 (7th Cir. 2015) ("Courts review the scope of an EEOC charge liberally.")

Giving Baker the leeway required by *Cheek*, the allegations at issue are within the scope of the EEOC charge. The charge "implicate[s] the *same individuals,*" *Cheek*, F.3d at 501, as the federal complaint: it contains specific allegations regarding Robinson, Pruitt, and White. Moreover, both the charge and federal complaint imply discrimination by other DPW supervisors, generally. *See Ocholi v. SkyWest Airlines*, No. 11-C-0310, 2012 WL 3150310, at *5 (E.D. Wis. July 31, 2012) (EEOC charge specifically naming one supervisor and implying that other supervisors engaged in wrongful conduct understood as alleging discriminatory conduct by supervisors in general). The general allegation that Baker was discriminated against for his

sexuality "giv[es] [the City] some warning of the conduct about which [Baker] is aggrieved." *Cheek*, 31 F.3d at 501.

The EEOC charge also describes the same conduct as the federal complaint. For example, it discusses the "suspicious, developing attendance issue" (EEOC Charge, ECF No. 17-1 at 2–3), that Baker's federal complaint alleges was mere pretext for Robinson to discipline him on account of his sexuality, (Second Am. Compl. ¶¶ 176, 265, ECF No. 52.) Both the charge and the federal complaint describe Supervisor White's "harassing" behavior in July 2023. (*Id.* ¶¶ 67–73; EEOC Charge, ECF No. 17-1 at 1.) Like the federal complaint, the charge alleges "discrimination" based on sexual orientation, generally. (EEOC Charge, ECF No. 17-1 at 3.) Evidence that Robinson groped Baker and that supervisors pervasively gossiped about and used anti-gay slurs against him "can reasonably be expected to grow of an EEOC investigation of [Baker's charge]." *Cheek*, 31 F.3d at 500.

Because the Court finds that the Title VII claims are timely and within the scope of the EEOC charge, Defendants' Motion to Dismiss is **denied** as to Counts I and II.

**B. Interference**

In Count VI, Baker claims that the City Defendants interfered with the exercise of his ADA-protected rights in violation of 42 U.S.C. § 12203(b). Under the ADA, it is unlawful to "coerce, intimidate, threaten, or interfere with any individual in the exercise or enjoyment of, or on account of his or her having exercised or enjoyed . . . any right granted or protected by [the ADA]." 42 U.S.C. § 12203(b). To state a claim for interference, Baker must allege that: "(1) [he] engaged in activity statutorily

protected by the ADA; (2) [he] was engaged in . . . the exercise or enjoyment of ADA protected rights; (3) the [D]efendants coerced, threatened, intimidated, or interfered on account of [his] protected activity; and (4) the [D]efendants were motivated by an intent to discriminate." *Frakes v. Peoria Sch. Dist. No. 150*, 872 F.3d 545, 550 (7th Cir. 2017). The City Defendants argue that Baker's claim must be dismissed because it fails on the third element in that Baker failed to allege any conduct constituting impermissible interference. (Defs.' Br. 12–14, ECF No. 58.) The Court disagrees.

The Court agrees with the City Defendants that the City requesting further information from Baker's physician about his medical condition is not actionable interference, but rather is a reasonable inquiry into whether Baker could perform the essential job functions. *See* 42 U.S.C. § 12112(d)(4)(B) ("A covered entity may make inquiries into the ability of an employee to perform job-related functions.").

However, the City Defendants fail to address the other acts that Baker alleges constituted interference. For instance, the City Defendants fail to mention Baker's allegation that the City "[u]s[ed] ADA protections to justify Plaintiff's demotion and transfer to a less desirable position" and "[r]espond[ed] to [his] request for help avoiding severe back pain by cruelly assigning him to a physically grueling Laborer position." (Second Am. Compl. ¶, 303, ECF No. 52.) At this stage, these allegations of adverse employment actions in response to Baker seeking accommodation are sufficient to allege a plausible ADA interference claim. *See Bozzi v. Cook Cnty. Sheriff's Off.*, No. 22 CV 03238, 2024 WL 3226576, at *11 (N.D. Ill. June 28, 2024) (allegations that plaintiff was subject to adverse employment actions after his ADA

request was rejected stated a claim); *Deka v. Countryside Ass'n for People With Disabilities, Inc.*, 140 F. Supp. 3d 698, 710 (N.D. Ill. 2015) (allegations that employer terminated employment before plaintiff was able to use her accommodation stated a claim); *Wagers v. ArvinMeritor, Inc.*, No. 1:05-CV-0121, 2007 WL 178618, at *4 (S.D. Ind. Jan. 18, 2007) (employer that chose to place employee on jobs that he would be unable to perform rather than find him a reasonable accommodation was not entitled to summary judgment on ADA retaliation claim).

City Defendants' Motion to Dismiss the interference claim is **denied** as to Count VI.

**C. Breach of Contract**

In Count VII, Baker claims that City of Indianapolis breached the CBA between the City and the Union, which provided him with certain protection as a third-party beneficiary. The City Defendants argue that Baker's state breach of contract claim is preempted by the Labor Management Relations Act ("LMRA") or the City is otherwise immune from liability under the LMRA. The Court agrees.

Section 301 of the LMRA states that "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). The LMRA expressly excludes "any State or political subdivision thereof" from the definition of an employer. *Id.* § 152(2). Thus, States and political subdivisions are "immune from federal claims arising under [Section] 301" of the LMRA. *Healy v. Metro. Pier & Exposition Auth.*, 804 F.3d

836, 841 (7th Cir. 2015). Section 301 preempts both claims "founded directly" on a CBA and those that "indirectly implicate" a CBA. *Id.* Accordingly, Section 301 preempts any state claim that requires interpretation of the relevant CBA and converts that state claim into a Section 301 claim. *Id.* at 842.

As a political subdivision of the State of Indiana, the City of Indianapolis is not covered by the LMRA. *See* 29 U.S.C. § 152(2); *N.L.R.B. v. Yeshiva Univ.*, 444 U.S. 672, 704 n.17 (1980). Baker argues that, because the City is not covered by the LMRA, "Section 301 cannot displace or preempt [Baker's] state-law right to enforce the [CBA]." (Pl.'s Resp. 14. ECF No. 63.) Baker acknowledges that the City is immune from *Section 301* claims but argues that the City's exclusion from the LMRA means that his *state law* claim is not preempted and should proceed. (*Id.* at 15.) *Healy* defeats Baker's argument.

In *Healy*, the Seventh Circuit held that a political subdivision's immunity from Section 301 claims bars not only claims brought directly under Section 301 but also state law claims that are converted to Section 301 claims. 804 F.3d at 841. *Healy* requires that the Court first decide that the LMRA preempts and converts Baker's state breach of contract claim into a Section 301 claim, *regardless* of the City's exclusion from the LMRA. Second, the City's immunity from Section 301 claims *because of* its exclusion from LMRA bars the now-converted Section 301 claim.

Accordingly, the City Defendants' Motion to Dismiss is **granted** as to Count VII. Count VII is dismissed with prejudice.[4]

**D. Punitive Damages Under Title VII and the ADA**

Baker seeks "[a]n award of punitive damages, as allowable by law." (Second Am. Compl. at 52, ECF No. 52.) Baker specifically demands punitive damages in Counts VII,[5] XIII, XIV, and XV, none of which are asserted against the City of Indianapolis. (*Id.* ¶¶ 313, 359, 371, 389.) The City Defendants ask that the Court strike Baker's prayer for punitive damages against the City of Indianapolis. (Defs.' Br. 16, ECF No. 58.)

Baker concedes that, as a political subdivision, the City of Indianapolis is immune from punitive damages in actions brought under Title VII and the ADA. (Pl.'s Resp. 15, ECF No. 63); *see* 42 U.S.C. § 1981a(b)(1). To the extent that Baker is seeking punitive damages against the City of Indianapolis under Title VII and the ADA, the Court agrees with City Defendants. However, the Court need not strike any language from the Second Amended Complaint, as such punitive damages would not be "allowable by law" and Baker does not demand punitive damages in any claim against the City.

**IV. Conclusion**

[4] Plaintiff asks the Court for leave to amend any portion of the Amended Complaint found deficient. (Pl.'s Resp. 16, ECF No. 63.) However, further amendment to Count VII would be futile under *Healy*, 804 F.3d at 841. Thus, Count VII is dismissed with prejudice.

[5] Here, Count VII refers to the ADA interference claim against the Union.

For the foregoing reasons, the City Defendants' Partial Motion to Dismiss, (ECF No. 57), is **denied** as to Counts I, II and VI and **granted** as to Count VII. Count VII is **dismissed with prejudice**.

IT IS SO ORDERED.

Date: 09/30/2026

JAMES R. SWEENEY II, CHIEF JUDGE
United States District Court
Southern District of Indiana

Distribution:

DEAUNDRE BAKER
6322 E. Pemboke Ct.
Camby, IN 46113

Robert Adam Hicks
Hicks Swanson
rhicks@maceylaw.com

Anthony W. Overholt
FBT Gibbons LLP
aoverholt@fbtgibbons.com

Mathew Rayman
OFFICE OF CORPORATION COUNSEL
mathew.rayman2@indy.gov

Alyson M Reed
FBT Gibbons LLP
areed@fbtgibbons.com